LEE H. GUNTER, EMPLOYEE, PLAINTIFF v. DAYCO CORPORATION ("DAYCO-WAYNESVILLE"), EMPLOYER, AND NATIONAL UNION FIRE INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 99A85

(Filed 12 August 1986)

**Master and Servant § 55.3 — transfer within company — injury while learning new position — accidental**

> The Industrial Commission's findings justified its conclusion that plaintiff suffered injury by accident where plaintiff was notified that he would be laid off and exercised his union seniority to displace a less senior employee; plaintiff's old position did not require manual labor or heavy pulling or pushing with his arms but his new job required him to twist hose onto a mandrel and off again after the hose had cured in an oven; plaintiff spent two days observing how the new job was done and two days doing the job; plaintiff ruptured a tendon on the third day as he was twisting and jerking a hose off the mandrel; and plaintiff testified that he was still learning how to do the new job when he was injured. Plaintiff had not become so proficient performing the new job or so accustomed to its new conditions that the twisting it required had become a part of his normal work routine.

> Justice BILLINGS took no part in the consideration or decision of this case.

APPEAL by defendants, pursuant to N.C.G.S. § 7A-30(2), of the decision of a majority of the Court of Appeals (*Judge Eagles*, with *Judge Whichard* concurring, and *Judge Webb* dissenting), re-

Gunter v. Dayco Corp.

ported at 72 N.C. App. 329, 324 S.E. 2d 621 (1985), affirming a workers' compensation award by the Industrial Commission.

*Smith, Patterson, Follin, Curtis, James & Harkavy by Donnell Van Noppen III for plaintiff appellee.*

*Russell & Greene, P.A., by J. William Russell for defendant appellants.*

EXUM, Justice.

Defendants seek reversal of the Commission's award of workers' compensation to plaintiff for temporary total disability suffered as a result of a ruptured tendon. The sole issue before this Court is whether plaintiff suffered "injury by accident" within the meaning of the Workers' Compensation Act, N.C.G.S. § 2(6). We hold that he did.

I.

The facts are not controverted. Plaintiff was employed under a contract which stated that before he could be laid off he was entitled to displace another employee in a different department with less union seniority than he. As a result of economic conditions at defendant Dayco Corporation, plaintiff was notified he would be laid off. Plaintiff exercised his union seniority and was assigned to the curved hose molding department. Plaintiff's old job as a calendar operator in the millroom did not necessitate that plaintiff engage in manual labor or heavy pulling or pushing with his arms. Plaintiff's new job in the curved hose molding department required him to do all these things. Plaintiff's chief responsibility was to twist hose onto a mandrel and then off again after the hose cured in an oven.

Plaintiff spent two days observing how the new job was done and then began doing the work himself. He worked two days without incident. A few hours after he began working on the third day he ruptured a tendon as he was twisting and jerking a hose off the mandrel.

Plaintiff testified he was still learning how to do the new job when he was injured:

I had trouble getting it [the hose] all off, it's sort of hard getting them on and off all of them, but I later found out that

the colder the mandrel the harder they are to get off and on. I was slow enough, I guess, I wasn't keeping my mandrels hot.

I testified earlier that the first two days on this new job I watched, and the second two days I worked. As to whether I worked at a regular pace, and whether I did a full day's work, the way that I would have been expected to do in the future, I was doing the work, but I wasn't doing it near as much as I should have been doing, as I would have been expected to do. But it is right that I was doing as much as I could.

With this evidence before it, the Commission, adopting findings of the hearing commissioner, first found as follows:

[The] evidence was uncontroverted . . . he [plaintiff] injured his left arm as he 'jerked it and twisted it.'

The evidence is also clear that the plaintiff had not learned how to do the new job when he was injured.

The Commission then made the following additional findings and conclusions:

1. Prior to December 1981 plaintiff had been employed by defendant for some time as a calendar operator in the mill room. In December 1981 he was transferred to a new job building curved hose, and it was on his fifth day at this new job that he was injured. His first two days on the new job plaintiff had observed, and then he had worked two days before he was injured.

2. Plaintiff's job required him to put hose on a tube, where it was cured, and then to take it off. When putting the hose on the tube it was necessary to twist and turn it, and apparently this also was necessary when taking the hose off. It was while jerking and twisting a hose off a tube on December 18, 1981 that plaintiff injured his left arm.

3. Plaintiff's new job involved greater exertion and twisting and jerking movements not involved in his previous job and these circumstances constituted an interruption of his normal work routine. He therefore sustained an injury by accident arising out of and in the course of his employment

on December 18, 1981 when he ruptured a tendon in his left arm which had been broken in a previous injury on the job in 1970. Plaintiff was temporarily totally disabled as a result of his injury from December 18, 1981 until March 22, 1982.

4. Plaintiff sustained an injury by accident arising out of and in the course of his employment as a result of the interruption of his normal work routine and is entitled to benefits under the Workers' Compensation Act. G.S. 97-2(6).

Upon the foregoing findings of fact and conclusions of law, the Commission entered an award of compensation at the rate of $210 per week for temporary total disability less an attorney's fee and for medical expenses incurred as a result of the injury. The Court of Appeals affirmed the Commission's award with Judge Webb dissenting on the ground that "the plaintiff was carrying out the duties of his job when he was injured. There is nothing to show the normal work routine of his job was interrupted."

II.

The Workers' Compensation Act extends coverage only to "injury by accident arising out of and in the course of employment." N.C.G.S. § 97-2(6), (18) (1985). This Court has interpreted the language of the statute, "injury by accident," to mean an injury caused by accident. "[I]njury by accident implies a result produced by a fortuitous cause . . . . There must be an accident followed by an injury by such accident which results in harm to the employee before it is compensable under our statute." *Slade v. Hosiery Mills*, 209 N.C. 823, 825, 184 S.E. 844, 845 (1936). If an employee is injured while carrying on his usual tasks in the usual way the injury does not arise by accident. *Jackson v. Highway Commission*, 272 N.C. 697, 701, 158 S.E. 2d 865, 868 (1968). An accidental cause will be inferred, however, when an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences occurs. *Harding v. Thomas & Howard Co.*, 256 N.C. 427, 429, 124 S.E. 2d 109, 111 (1962); *Moore v. Sales Co.*, 214 N.C. 424, 430, 199 S.E. 605, 608 (1938).

In reliance on *Adams v. Burlington Industries*, 61 N.C. App. 258, 300 S.E. 2d 455 (1983), the Industrial Commission and the Court of Appeals agreed in the case at bar that the twisting and

jerking movements involved in plaintiff's new job "constituted an interruption of his normal work routine." The claimant's regular duties in *Adams* involved lifting chairs from a conveyor belt, turning them upside down, and securing them in cartons. His normal work routine required him to lift chairs with his upper torso in a straight posture. On the day of his injury claimant was asked to fill in on the "hot box" because the employee who ordinarily worked there was absent from work. The hot box job involved putting a cardboard tray on the conveyor belt, placing a chair on the tray and covering the chair with plastic. It required claimant to pick up every chair with a twisting motion of his upper torso. Claimant injured his back three and one-half hours after he began working on the hot box. The Court of Appeals held that claimant's normal work routine of lifting chairs with his upper torso in a straight posture was interrupted by the introduction of the turning and twisting movements required by the hot box job; it affirmed the Industrial Commission's conclusion that plaintiff sustained injury by accident. *Adams v. Burlington Industries*, 61 N.C. App. at 261-62, 300 S.E. 2d at 457.

Defendants contend the Court of Appeals erred here in holding that the Commission's findings of fact justified its conclusion of law that the jerking and twisting movements involved in plaintiff's new job interrupted his normal work routine. Defendants do not dispute that the new job of building curved hose required plaintiff to twist and turn his arms in a manner the millroom job did not require. They argue, rather, that as of the time plaintiff was injured, after two days of watching and two days and a few hours of performing it, the turning and jerking required by the curved hose molding job had become part of plaintiff's work routine. They attempt to distinguish *Adams* on the basis that lifting chairs in a straight posture clearly remained the normal work routine of the claimant in *Adams* because he was assigned to the hot box to fill in for an absent employee only for one day. In this case they say the twisting required in the curved hose molding job was not a mere temporary interruption in plaintiff's regular routine because when he was assigned to the new job he was expected to work there regularly.

Defendants cite *Trudell v. Heating & Air Conditioning Co.*, 55 N.C. App. 89, 284 S.E. 2d 538 (1981), as dispositive of this case.

In *Trudell,* plaintiff was employed to do service installments. In order to install air ducts he had to work in the crawl spaces underneath buildings. Two months after he was hired, plaintiff began working at a condominium site in which the crawl space was lower than any other under which he previously worked. After at least one and perhaps two weeks at the site, plaintiff began to feel pain in his lower back. The Court of Appeals agreed with the Commission that "the low crawl space had become part of plaintiff's normal work routine," concluded "[t]here was, therefore, no accident causing his back injury," and affirmed the Commission's denial of compensation. *Trudell v. Heating & Air Conditioning Co.,* 55 N.C. App. at 91, 284 S.E. 2d at 540.

We agree with defendants that *Adams* does not control this case. Claimant in that case, unlike plaintiff, was working on a short-term, temporary assignment at the time he was injured. We are not persuaded, however, that compensation must be denied under authority of *Trudell.* In *Trudell* the Court of Appeals concluded plaintiff's new working conditions had become part of his work routine before he was injured. In the instant case we conclude plaintiff's new working conditions had not become part of his work routine at the time of his injury.

New conditions of employment to which an employee is introduced and expected to perform regularly do not become a part of an employee's work routine until they have in fact become routine. A routine is "1a: a standard practice: regular course of procedure. b: the habitual method of performance of established procedures. . . . 3a: an established sequence of operations (as in a factory or business establishment)." Webster's Third New Int'l Dictionary (1979). New conditions of employment cannot become an employee's "regular course of procedure" or "established sequence of operations" until the employee has gained proficiency performing in the new employment and become accustomed to the conditions it entails.

The Commission made findings of fact supported by competent evidence which support our conclusion that plaintiff had not become so proficient performing the new job or so accustomed to its new conditions that the twisting it required had become a part of his normal work routine. The Commission made factual findings that while plaintiff "had spent two days observing how the new

work was done," he spent only "two days and a few hours doing it when the injury occurred." The Commission similarly found that "[t]he evidence is clear that plaintiff had not learned how to do the new job when he was injured." Plaintiff described the curved hose molding job as "it's learning how and it's a whole lot of knowing how to do it." He also stated that removal of the hose was more difficult for him than more experienced workers because he struggled more than they with the hoses before learning how to put them on and off the mandrels efficiently, allowing the mandrels to cool. Finally, plaintiff testified he was not performing the work nearly as efficiently as would be expected of him in the future.

Plaintiff's testimony that his inexperience required him to twist and turn the hose more vigorously than more experienced workers also distinguishes this case from *Trudell*. No matter how proficient he became, the employee in *Trudell* could not alter the new condition he confronted; he could do nothing to increase the height of the crawl space. In this case as plaintiff gained proficiency, he would not have had to jerk and twist the hose off the mandrel with as much effort as he was required to expend at the time he was injured.

Defendants argue finally that had plaintiff not chosen to transfer into this new position, been laid off, and accepted work for another employer, he would have no basis for claiming compensation for an injury received under similar circumstances in the new employment. They say he should not receive compensation because he chose to transfer to the new job rather than be laid off.

We are not persuaded that the circumstances under which plaintiff began performing the curved hose molding job preclude him from receiving compensation. We do not express an opinion whether a new employee injured under circumstances similar to those existing in this case could receive compensation because we do not believe the rights of such an employee, whatever they may be, are determinative of plaintiff's rights. Plaintiff simply is not a new employee; he has worked for defendant Dayco Corporation for more than ten years.

The Workers' Compensation Act should be liberally construed to effectuate its purpose to provide compensation for in-

jured employees and its benefits should not be denied by a narrow, technical and strict construction. *Keller v. Wiring Co.*, 259 N.C. 222, 130 S.E. 2d 342 (1963). The analogy defendant asks us to make between plaintiff and a new employee injured under similar circumstances would require us to construe the Act in the most narrow way to plaintiff's detriment, which we decline to do. We hold that the Court of Appeals did not err in concluding that the Commission's findings of fact justified its conclusion of law that plaintiff suffered an injury by accident.

For all the foregoing reasons the decision of the Court of Appeals is

Affirmed.

Justice BILLINGS took no part in the consideration or decision of this case.