The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr. and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the modification of Findings of Fact 5, 6 and 7 and Conclusion of Law 1.
Prior to hearing the parties entered into a Pre-Trial Agreement, which is hereby incorporated by reference as if fully set out herein and where they agreed to a number of jurisdictional and other factual stipulations, including as part thereof the attached package of Industrial Commission forms and medical and documentary records.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is an unemployed, thirty-three year old married male, who last worked for Star Leasing in February of 1995 as a driver hauling freight to and from the West Coast, which was less physically demanding than the regular local route delivery job that he had returned to following his injury in September of 1993. Plaintiff left Star Leasing after only two weeks because of problems with his pay.
2. In 1979 at age seventeen plaintiff injured his right knee when he jumped over something and landed wrong requiring him to be seen by the same orthopedic surgeon that treated him for the right knee injury giving rise hereto. Not only did plaintiff recover from his earlier knee injury enabling him to engage in strenuous physical labor, including as part thereof loading and unloading trucks as well as repetitively climbing in and out of them, but the earlier knee injury was to the lateral aspect of the right knee and when he underwent corrective knee surgery for the medial meniscus tears sustained on the date in question his lateral meniscus was intact.
3. In September of 1992 he became employed by defendant-employer's food service business as a route driver responsible for delivering frozen, refrigerated, and dry goods to various establishments on his assigned route, which, during his subsequent period of employment, had included long distance, school, and street routes.
4. When injured on July 16, 1993 plaintiff's assigned route required him to pick up canned goods once or twice a week at the Hunt-Wesson warehouse in Charlotte. The boxes of canned goods were stacked six feet high on pallets and warehouse employees delivered them to plaintiff's vehicle by forklift, where he would subsequently use an electric pallet jack to load them. Before loading the ten pallets of canned goods he averaged picking up at Hunt-Wesson, plaintiff would walk backwards applying shrink wrap to each pallet with a three foot wide roll of plastic to prevent the cardboard boxes from sliding around in the back of his vehicle as they had a tendency to do.
5. While loading freight at the Hunt-Wesson Warehouse on July 16, 1993, plaintiff had difficulty keeping up with the work because the warehouse employees were bringing the pallets out at a fast pace and were putting the pallets so close together that plaintiff had trouble maneuvering around them. These conditions resulted in additional pressure on plaintiff's knees as he twisted and turned around the pallets with a roll of plastic. In addition, plaintiff's work was interrupted at least eight times by telephone calls from defendant concerning other freight deliveries. Plaintiff had to walk a distance of approximately 50 yards from the loading area to the location of the telephone.
6. Plaintiff had just finished wrapping a pallet and was going to retrieve an electric pallet jack when his right knee began to feel weak and tired. When plaintiff reached the pallet jack, his knee popped out of joint, and he fell to the ground. As a result of this incident, plaintiff sustained two bucket-handle tears of his medial meniscus.
7. The stressful working conditions which existed on plaintiff's job on July 16, 1993, were significantly different from the normal way he performed his job duties. The combination of extra exertion, twisting movements, rapid pace of work, difficulty maneuvering and repeated phone calls constituted an interruption of plaintiff's normal work routine and an introduction of unusual circumstances likely to result in unexpected consequences.
8. On the same day plaintiff was seen by Dr. Tin T. Le, who provided a conservative course of treatment consisting of medication and an ACE bandage, took him out of work and referred him to an orthopedic surgeon.
9. On July 20, 1993 plaintiff came under the care of the same orthopedic surgeon that had treated his earlier right knee injury, Dr. David Rockwell, who subsequently performed corrective surgery for the medial meniscus tears sustained as a result of his July 16, 1993 fall.
10. Although having neither reached maximum medical improvement, nor the end of the healing period from and following the same injury, nor then able to return to his regular route drivers job by August 16, 1993, plaintiff had sufficiently recovered from his injury so as to be able to return to a lower paying light duty job as a driver trainer until returning to his regular route driver's job on September 9, 1993. As a driver trainer, plaintiff only earned an average weekly wage of $177.92 per week. Based on the $610.00 in earnings during the period he was on light duty from August 16, 1993 to September 9, 1993, plaintiff is entitled to two thirds of the difference between the $330.30 average weekly wage he was able to earn at the time of his injury and the $177.92 average weekly wage he was able to earn performing light duty work or $101.59 per week during this same period.
11. When plaintiff returned to his regular route driver's job on September 9, 1993, his disability presumptively ended and he was able to continue the same job for almost a year and a half despite his permanent knee injury until he elected to pursue an alternate driving job with Star Leasing. Plaintiff remained capable of continuing his regular route driver's job for defendant-employer had he not voluntarily elected to leave it to pursue other employment.
12. By April 25, 1995, after he had undergone the Cybex evaluation recommended by Dr. Rockwell, plaintiff had reached maximum medical improvement and/or the end of the healing period from and following the July 16, 1993 right knee injury giving rise hereto and corrective surgery necessitated thereby, at which time he retained a ten percent permanent partial disability of the right leg as a result of the same injury.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On July 16, 1993 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant resulting in a disabling injury to his right knee. N.C. Gen. Stat. § 97-2(6); Gunter v. Dayco Corp., 317 N.C. 670, 346 S.E.2d 395
(1986); Adams v. Burlington Industries, 61 N.C. App. 258,300 S.E.2d 455(1983).
2. As a result of the injury by accident giving rise hereto plaintiff was temporarily totally disabled from July 17, 1993 to August 15, 1993 entitling him to compensation at a rate of $220.21 per week during this same period. N.C. Gen. Stat. § 97-29.
3. As a result of the injury by accident giving rise hereto plaintiff was temporarily partially disabled from August 16, 1993 to September 9, 1993 entitling him to compensation at a rate of two thirds of the difference between his $330.30 average weekly wage at the time of the involved injury and the reduced $177.92 average weekly wage he was able to earn in his intervening light duty job as a driver trainer during this period or compensation at a rate of $101.59 per week. N.C. Gen. Stat. § 97-30.
4. As a result of the injury by accident giving rise hereto plaintiff retains a ten percent permanent partial disability of the right leg entitling him to twenty weeks of compensation at a rate of $220.21 per week commencing as of April 21, 1995, when plaintiff reached maximum medical improvement and/or the end of the healing period from and following the same injury and corrective surgery necessitated thereby and was rated by his treating physician. N.C. Gen. Stat. § 97-31(15).
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff, on account of his temporary total disability, compensation at a rate of $220.21 per week from July 17, 1993 to August 15, 1993 and thereafter compensation at a rate of $101.59 per week during the period from August 16, 1993 to September 9, 1993 on account of his temporary partial disability as well as an additional twenty weeks of compensation at a rate of $220.21 per week for his resulting ten percent permanent partial disability of the right leg. Such compensation as has accrued hereunder shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. A reasonable attorney fee in the amount of twenty-five percent of the compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the accrued compensation benefits due under the same Award and forwarded directly thereto.
3. To the extent the same was reasonably designed to affect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable necessary medical expenses incurred by plaintiff as a result of the right knee injury giving rise hereto, including as part thereof, the corrective knee surgery he underwent, when bills for the same are submitted in accordance with Industrial Commission rules.
4. Defendants shall bear the costs, including as part thereof the $550.00 expert witness fee previously awarded Dr. Rockwell for his deposition testimony to the extent the same has not already been paid.
 S/ _________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________ J. RANDOLPH WARD COMMISSIONER
LKM:bjp