***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon review of the evidence reverses the Opinion and Award of the deputy commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the deputy commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Electric Insurance Company was the carrier on the risk at all relevant times.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage was $774.15, which yields a compensation rate of $516.05.
5. The parties stipulated medical records and Industrial Commission forms into evidence.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the deputy commissioner on 31 October 2003, plaintiff was fifty-two years old and a high school graduate. He had worked for defendant-employer since 1976. Defendant-employer manufactured industrial lighting panels similar to circuit breaker boxes. Plaintiff rotated through various jobs in the plant. For the last three years of his employment, he worked in manual fabrication as an assembler on first shift.
2. As of 4 January 2003, plaintiff was assigned to the pick up line. Plaintiff was then rotated to a job in the manual fabrication area to work on a new product because defendant-employer was behind in production. On this new job rotation, plaintiff operated the Cincinnati shear machine at the start of the fabrication process. His duties included cutting down 4-feet by 100-feet sheets of steel into smaller sheets called blanks. The sheets of steel came in bundles. Each sheet weighed 83.64 pounds and was coated with lubricating oil. Plaintiff was required to pull the sheets of steel apart and load them onto the shear table. To do this, he would shake the edge of the sheet to get air between the sheets to facilitate moving it onto the shear table to be processed in the machine.
3. On 22 January 2003, a sheet of steel that plaintiff was moving to the shear machine caught on something. When plaintiff continued pulling the sheet, he felt a burning sensation and tingling in his chest, left shoulder and the side of his neck. Plaintiff immediately sought first aid with Occupational Health Nurse Sue Dierksen. She examined plaintiff and recommended ibuprofen and a hot and cold pack for plaintiff's sore muscles. Nurse Dierksen completed an Associate Health Report to document plaintiff's complaints and her findings. She did not recommend that plaintiff see a doctor. Plaintiff continued to work.
4. Prior to 22 January 2003, plaintiff had never experienced pain or discomfort in his chest, left shoulder or neck. Plaintiff had, however, sustained a low back sprain in 2000.
5. On 31 January 2003, plaintiff returned to Nurse Dierksen, reporting that his left shoulder felt better, but his neck was sore. He continued to work. Plaintiff again returned to Nurse Dierksen on 4 February 2003 with complaints of upper arm soreness. On 21 February 2003, Nurse Dierksen advised plaintiff to schedule an appointment with Dr. Stephen Furr at Centralina Orthopaedic and Sports Medicine. She prepared a Form 19 employer's report of injury, which noted, plaintiff "states he felt discomfort in the left shoulder (trapezius) blade area, unsure of exact incident. States he rotated to this job three weeks earlier and part of the job is picking up blank sheets of steel for machine."
6. Plaintiff reported his neck pain to his supervisor, Eric Pate, on 27 February 2003. Plaintiff reported that his neck pain was due to a work-related injury. Defendant-employer prepared a second Form 19 employer's report of injury for plaintiff's neck injury.
7. On 24 February 2003, plaintiff presented to Dr. Furr complaining of a pulling in the mid posterior trapezial area on the left side, and a burning sensation, numbness and tingling along the anterior chest region. He reported that he had injured himself while at work. X-rays showed decreased C5-6 space with anterior spurring. Dr. Furr diagnosed plaintiff with cervical strain, left trapezial strain and cervical arthritic changes and ordered an MRI and EKG. Dr. Furr prescribed Sterapred 12-day low-dose Dosepak and Vioxx.
8. The MRI revealed degenerative changes throughout C3-T1. On 17 March 2003, Dr. Furr noted in his medical notes that plaintiff's injury was potentially related to the reported work injury in January 2003. Medical notes from 19 March 2003 indicate that the results of the diagnostic studies' were consistent with left medial and ulnar nerve mononeuropathies at or near the wrist and left upper cervical radiculopathic changes at C4. On 14 April 2003, plaintiff complained of numbness in his face and pain in the side of his neck. Dr. Furr restricted him to no overhead activity and no getting down on his knees until Dr. Ranjan Roy, a neurosurgeon, could see him.
9. On 13 May 2003, Dr. Roy examined plaintiff. He noted that plaintiff's MRI clearly showed disc protrusion and spondylosis at C3-4, moderate at C4-5 and severe bilaterally at C5-6. Dr. Roy recommended epidural injections for plaintiff. After the injections failed to provide relief, Dr. Roy performed an anterior cervical diskectomy and fusion on plaintiff from C3-C7 on 29 May 2003. After the surgery, plaintiff was temporarily totally disabled from work from 29 May 2003 to 19 August 2003, the date he returned to work.
10. Defendants denied plaintiff's claim via a Form 61 filed on 21 May 2003.
11. Plaintiff filed a Form 18 employee's report of injury on 1 July 2003, upon which he noted, "while moving 4' x 10' [sic] sheets of steel on to manual shear table, I felt a burning in left shoulder, front and rear, immediately followed by tingling in left side of neck and left shoulder, neck became very tight and sore."
12. Based on the greater weight of the evidence, on 22 January 2003, plaintiff sustained an injury to his neck, chest and left shoulder arising out of and in the course of his employment, when a sheet of steel that he was moving unexpectedly got caught on something, causing plaintiff pain in his left shoulder, chest and neck when he continued to pull the sheet of steel.
13. Plaintiff's neck injury occurred as a direct result of a specific traumatic incident of the work assigned. When plaintiff continued to pull on the sheet of steel that had caught on something, he felt a burning and tingling in his chest that went up into the side of his neck. Plaintiff sought medical attention immediately from the plant nurse.
14. Plaintiff's injury to his chest and left shoulder resulted from an accident within the meaning of the Workers' Compensation Act. Although there was evidence that the steel sheets were sometimes difficult to maneuver, when the steel sheet caught on something on 22 January 2003, it was an unexpected occurrence that plaintiff did not design, and it constituted an interruption of his work routine and the introduction of an unusual condition likely to result in unexpected consequences. The incident therefore constituted an accident within the meaning of the Workers' Compensation Act.
15. Based on the greater weight of the evidence, plaintiff's disability arose primarily from his need for neck surgery. Plaintiff underwent an anterior cervical diskectomy fusion from C3-C7, but no medical expert has given an opinion on whether his need for surgery was caused by his work-related neck injury. Plaintiff was not represented by an attorney at the hearing before the deputy commissioner.
16. A portion of plaintiff's medical treatment was paid by group health insurance. Plaintiff received some benefits through employer-funded short-term disability insurance. Plaintiff's group health insurance refused to pay for his Orthofix collar, which went over his neck brace.
17. Plaintiff returned to work on 19 August 2003 at the same or greater wages.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 22 January 2003, plaintiff sustained an injury to his neck, left shoulder and chest, which arose out of and in the course of his employment when the sheet of steel that he was pulling unexpectedly got caught on the shear machine, causing pain in his left shoulder, chest and neck when he continued to pull the sheet of steel. Plaintiff's injury to his neck occurred as the direct result of a specific traumatic incident of the work assigned and therefore constituted an injury by accident. Plaintiff's injury to his left shoulder and chest also constituted injuries by accident within the meaning of the Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
2. Pursuant to the Act, an injury is compensable only if it is caused by an "accident." N.C. Gen. Stat. § 97-2(6); Calderwood v.Charlotte-Mecklenburg Hosp. Auth., 135 N.C. App. 112, 115,519 S.E.2d 61, 63 (1999). An "accident" is "an unlooked for and untoward event which is not expected or designed by the person who suffers the injury." Moose v. Hexcel-Schwebel, ___ N.C. App. ___, 592 S.E.2d 615
(2004). An accident is inferred when the employee's work routine is interrupted and the introduction of those unusual conditions results in unexpected consequences. Konrady v. U.S. Airways, Inc., ___ N.C. App. ___, ___ S.E.2d ___ (Filed: Aug. 3, 2004) (quoting Gunter v. DaycoCorp., 317 N.C. 670, 673, 346 S.E.2d 395, 397 (1986). Therefore, to "be an accident, the incident must have been for the employee an `unlooked for and untoward event.'" Konrady, supra (quoting Cody v. Snider Lumber Co.,328 N.C. 67, 70, 399 S.E.2d 104, 106 (1991)). See also Lineback v. WakeCounty Bd. Of Comm'rs, 126 N.C. App. 678, 681, 486 S.E.2d 252, 254-55
(1997). Although there was evidence that the steel sheets were sometimes difficult to maneuver, when the steel sheet plaintiff was moving on 22 January 2003 caught on something while he was pulling it, this occurrence was an unlooked for and untoward event that was not expected or designed by plaintiff. It constituted an interruption of his work routine and the introduction of an unusual condition likely to result in unexpected consequences.
3. A claim for injury to the neck, which is part of the back, is compensable if it arises out of and in the course of employment and is the direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6). The words "specific" and "incident" mean that the trauma or injury must not have developed gradually, but must have occurred at a cognizable time. Bradley v. E.B. Sportswear, Inc.,77 N.C. App. 450, 452, 335 S.E.2d 52, 53 (1985). Plaintiff's testimony on how and when the injury to his neck occurred is accepted as credible and establishes a specific traumatic incident as a direct result of the work assigned.
4. Plaintiff's disability primarily arose from his neck surgery. Plaintiff underwent an anterior cervical fusion and was temporarily totally disabled from 29 May 2003 through 19 August 2003 due to the surgery. N.C. Gen. Stat. §§ 97-2(9).
5. Plaintiff is entitled to temporary total disability compensation in the amount of $516.05 per week for the period from 29 May 2003 through 19 August 2003. N.C. Gen. Stat. §§ 97-29; 97-2(5).
6. Defendants are obligated to pay for all medical expenses incurred or to be incurred by plaintiff for the treatment of his injuries by accident for so long as such treatment is reasonably required to effect a cure, give relief, and/or lessen plaintiff's disability. N.C. Gen. Stat. §97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for compensation based on injury by accident and specific traumatic incident arising out of and in the course of his employment is granted.
2. It is hereby ORDERED that the record be re-opened for additional medical evidence on causation and whether plaintiff sustained any permanent partial disability.
3. The parties shall have 60 days to depose medical experts or to submit additional stipulated medical records. The parties shall also provide evidence to clarify the size of the steel sheets.
This the ___ day of August 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/__________ THOMAS BOLCH COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER