* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and the defendant-employer at all times relevant to this claim.
3. The workers' compensation carrier on the risk is Berkley Insurance Company of the Carolinas.
4. Plaintiff's compensation rate is $475.47.
5. The medical records of Gregory Holthusen, M.D., Gregg Cregan, M.D., Medical Park Hospital, PrimeCare of Highland Oakes, Forsyth Medical Center, Forsyth Emergency Services, Forsyth Radiological Associates, Piedmont Imaging, Orthopaedic Specialists of the Carolinas (physical therapy) and CVS Pharmacy were stipulated into evidence.
 * * * * * * * * * * *
Based upon all the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 40 years of age. He was employed as a service technician for the defendant-employer for approximately five (5) years.
2. As part of his duties as a service technician, plaintiff would set temporary service posts for construction sites. This required plaintiff to use a posthole digger to dig a hole approximately 2 feet deep by 8 inches wide into which a four-inch by four-inch post with a meter can would be set. Prior to October 7, 2003, plaintiff's duties as a service technician required him to dig approximately three holes per week to set posts. At the hearing before the Deputy Commissioner, plaintiff admitted that the digging of holes to set posts was part of his normal duties, and was a strenuous activity.
3. On October 7, 2003, plaintiff was using a posthole digger to dig a hole and injured his left shoulder. Plaintiff testified that due to recent rain, the hole had filled with water and the water in the hole caused suction, requiring more force than usual to remove the soil. Plaintiff further testified that as he pulled the posthole digger to remove soil, he felt a pull in his left shoulder.
4. Plaintiff also testified that all soil and therefore, all holes are not the same. Plaintiff testified that he has been required to dig holes in different types of ground soil and in different locations. Although he testified that he used more force than usual on this occasion, he could not deny that he had previously dug holes in wet clay.
5. Plaintiff reported his injury to his supervisor, Ronnie Manring, the same day. He sought treatment on October 7, 2003, at the Forsyth Medical Center Emergency Department. According to the triage history, plaintiff reported that he sustained a twisting injury using a posthole digger. The emergency department physician's clinical impression was to rule out a left rotator cuff injury.
6. Plaintiff received follow-up treatment at PrimeCare on October 17, 2003, and the record for that visit indicates plaintiff reported that his injury occurred "digging a hole, pulled my shoulder." Plaintiff remained under the care of the physicians at PrimeCare and underwent an MRI of the left shoulder on December 15, 2003, which indicated evidence of mild degenerative tendonopathy, but no rotator cuff tear.
7. On January 8, 2004, plaintiff presented to Dr. Gregory G. Holthusen, an orthopedic surgeon, and reported that his injury occurred digging a hole with a posthole digger and that the dirt was wet. As he was lifting the digger out of the hole and pulling the handles apart, he felt a searing pain in the left shoulder. Dr. Holthusen's opinion was that plaintiff probably did have a rotator cuff tear, which occurred at the time of the digging incident tearing a previously worn supraspinatus tendon.
8. On February 12, 2004, plaintiff underwent a left shoulder arthrogram that showed no evidence of a rotator cuff tear. Thereafter, plaintiff was sent to physical therapy three (3) times per week.
9. On May 11, 2004, plaintiff was examined by Dr. Gregg E. Cregan, an orthopedic surgeon, and diagnosed with a degenerative AC joint exacerbated by the posthole digging. Dr. Cregan recommended an AC joint injection, which was carried out that day.
10. Subsequently, on June 1, 2004, Dr. Cregan's impression changed to impingement syndrome with distal clavicular arthritis and he recommended an arthroscopic acromioplasty and mumford distal clavical resection. On July 20, 2004, Dr. Cregan carried out a subdeltoid injection and plaintiff last saw Dr. Cregan on August 3, 2004, at which time he reported feeling significantly better.
11. Dr. Holthusen removed plaintiff from work for five (5) weeks to rest his shoulder. Plaintiff has continued to remain in the employment of the defendant-employer and has not been required to dig holes for service poles.
12. Based on the greater weight of the credible evidence in the record, the Full Commission finds that plaintiff's injury on October 7, 2003, is not the result of an "accident" within the meaning of N.C. Gen. Stat. § 97-2(6) in that it was not an unlooked for and untoward event, which was not expected or designed by the injured employee. Plaintiff's testimony was that he regularly dug holes for the setting of service posts, no hole was the same and, in the course of normal work operations, he regularly had to dig in different types of ground soil, sometimes in difficult soil, in different locations. The Full Commission finds that the digging of a hole with water in it following a period of rain was not unusual and unexpected and was in the normal course of plaintiff's work.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the North Carolina Workers' Compensation Act, there must be a work-related "accident." Our Supreme Court has defined an "accident" as "(1) an unlooked for and untoward event which is not expected or designed by the injured employee; (2) a result produced by a fortuitous cause." Harding v. Thomas Howard Co.,256 N.C. 427, 428, 124 S.E.2d 109, 110-11 (1962). See also Gunter v.Dayco Corp., 317 N.C. 670, 346 S.E.2d 395 (1986). Plaintiff is required to show that something unexpected and outside of his normal work duties occurred which interrupted his work routine and caused his injury. Harding, 256 N.C. 427, 124 S.E.2d 109.
2. Plaintiff has failed to prove by a greater weight of the competent evidence that he sustained an injury by accident arising out of or in the course of his employment with the defendant-employer on October 7, 2003. N.C. Gen. Stat. § 98-2(6).
3. Plaintiff is not entitled to benefits under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2 etseq.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Under the law, plaintiff's claim must be and is hereby denied.
2. Each side shall pay their own costs.
This the __ day of _____________ 2006.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER