***********
The undersigned have reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Ledford with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. On November 20, 2007, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On that date, an employment relationship existed between Plaintiff-employee and Defendant-employer.
4. Travelers Insurance Company was the carrier on the risk for the Defendant-employer.
5. On November 20, 2007, the Plaintiff sustained a left Achilles tendon rupture arising out of and in the course of his employment with Defendant-employer. Defendants deny that Plaintiff's injury was caused by an "accident" within the meaning of the North Carolina Workers' Compensation Act.
6. Plaintiff's average weekly wage is $654.47, which yields a compensation rate of $436.33.
7. Plaintiff has not worked for Defendant-employer since November 20, 2007.
 ***********
The following documentary evidence was received as:
 EXHIBITS (a) All Industrial Commission forms.
 (b) All of Plaintiff's medical records.
 (c) Plaintiff's recorded statement.
 (d) Plaintiff's employment records.
 (e) The parties' discovery responses. *Page 3 
 ***********
Based upon all of the competent evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, Plaintiff was 52 years of age. He graduated from Lafayette High School in Lillington, North Carolina, and has no other education or vocational training.
2. After graduating from high school, Plaintiff worked on his family's farm until the age of thirty. Thereafter, he worked for Southbend for 17.5 years where he assembled commercial cook stoves. Next, he worked as a security guard for the Department of Agriculture at the North Carolina State Fairgrounds. Plaintiff held this position for approximately one year before he was hired by Defendant-employer in September 2006.
3. Plaintiff worked for the Defendant-employer as a traffic control officer. Plaintiff was responsible for monitoring and controlling vehicular traffic around the airport's terminals. Plaintiff's responsibilities included stopping traffic to allow pedestrians to cross the roadway that separated the terminals from the airport's parking lots. All of his duties required him to stand or walk. He was not permitted to sit while on duty, and spent his entire work shift on his feet.
4. Prior to November 2007, Plaintiff had sustained an injury to his left foot. In June 2007, Plaintiff took a medical leave of absence from his employment. At that time, Plaintiff was under the care of Dr. David Boone for treatment of a bone spur and Achilles tendonitis in his left heel. After conservative treatment failed, Dr. Boone recommended surgery. On June 13, 2007, Dr. Boone performed a surgical excision of the bone spurring posterior to the calcaneus of the left foot and debridement of the Achilles tendon with reattachment of the tendon. *Page 4 
5. Following his June 13, 2007 surgery, Plaintiff was seen by Dr. Boone in regular follow-up visits. During his visits on August 28, September 25, and October 16, 2007, Plaintiff continued to complain of persistent pain. During Plaintiff's October 16, 2007 visit, Dr. Boone diagnosed Plaintiff with persistent pain following an Achilles tendon debridement and Dr. Boone explained to Plaintiff that this could take up to a year to resolve. Plaintiff was excused from work until September 10, 2007. On that date, Dr. Boone released Plaintiff to return to full duty employment.
6. Plaintiff returned to his regular duties on or about September 10, 2007. Between that date and his injury on November 20, 2007, Plaintiff's recovery was progressing normally. Dr. Boone did not assign any work restrictions, and Plaintiff performed his usual work duties for Defendant-employer.
7. On November 20, 2007, Plaintiff was working outside of Terminal C. Between Terminal C and the adjacent parking area, there is a pedestrian crosswalk, approximately six feet wide and six inches higher than the surrounding pavement. From the top, the crosswalk slopes down to the pavement of the roadway. One of Plaintiff's regular duties is to control traffic to allow pedestrians to use this crosswalk. As he was standing in the crosswalk, directing traffic to allow pedestrians to cross, Plaintiff stepped back onto part of the crosswalk where it slopes down to the roadway to let the people pass and felt a "popping sensation" in his left leg near his ankle.
8. Following this incident, Plaintiff sought the assistance of a co-worker and reported his injury to his supervisor. He then drove himself to Western WakeMed Emergency in Cary, where he was evaluated. Plaintiff reported that he underwent left heel spur surgery in June and had felt a pop with immediate onset of acute left heel pain after he stepped backwards on a curb. X-rays taken that day revealed calcaneal spurs and acute pins (post-surgical) within the *Page 5 
calcaneus, as well as prominent soft tissue swelling superior to the posterior calcaneus. Plaintiff was diagnosed with a ruptured Achilles tendon due to trauma. He was treated conservatively, restricted from work for three days and told to follow-up with his treating orthopedist.
9. Plaintiff was seen at Raleigh Orthopaedic Clinic by Dr. David Boone on November 27, 2007. Jay Maslow, PA-C, reported that Plaintiff was present to have a history and physical for a repair of a left Achilles tendon, possible FHL transfer, which was scheduled to be performed by Dr. Boone on December 3, 2007 at Rex Hospital.
10. Dr. Boone, on that same date, noted that Plaintiff had undergone an Achilles tendon debridement and reattachment on June 13, 2007. He had been healing well and had been back to work. Plaintiff had reported occasional soreness, but had been able to perform his job. Dr. Boone noted that on November 20, 2007, Plaintiff stepped back and felt a pop when he stepped off a curb. Upon examination, Dr. Boone found a gap in the Achilles near where it attaches to the calcaneus, consistent with an Achilles tendon rupture. An x-ray of the calcaneus revealed that the suture anchors were in place and there was no fracture. Dr. Boone recommended an Achilles tendon repair and advised Plaintiff that he would be non-weight bearing for at least six weeks. Additionally, Dr. Boone suggested a slower rehabilitation period.
11. On December 3, 2007, Dr. Boone performed surgery at Rex Healthcare in Raleigh to repair Plaintiff's Achilles tendon. Dr. Boone also removed the hardware in the left calcaneus. Dr. Boone continued to restrict Plaintiff from all work through February 5, 2008, at which time he released Plaintiff to return to sedentary employment. Thereafter, Dr. Boone gradually decreased Plaintiff's work restrictions.
12. Plaintiff returned for his first post-operative visit on December 18, 2007. He reported no complaints. Dr. Boone noted that he believed it was very important to protect the *Page 6 
foot when Plaintiff began walking on it due to the difficult time Plaintiff had healing his foot/ankle before. He instructed Plaintiff to refrain from weight bearing and advised him to follow up in three weeks.
13. A return to work note from February 5, 2008 indicated that Plaintiff could return to work on February 6, 2008 in a seated only position. A later return to work note dated April 1, 2008 indicated that Plaintiff was to remain out of work until April 14, 2008. At that time, Plaintiff could return to work to a position that would allow flexible sitting and standing and while wearing an orthopedic boot. A work note from April 29, 2008 released Plaintiff to return to work with the restrictions of no running or jumping, but allowed Plaintiff to stand and walk.
14. In Dr. Boone's June 26, 2007 medical note following Plaintiff's first surgery, he indicated that Plaintiff had a risk of rupturing his tendon. In his deposition, Dr. Boone stated that Plaintiff had a risk of an Achilles tendon rupture because it had previously been detached and reattached to the heel bone. Dr. Boone did not know at what point Plaintiff's risk of rupture would decrease to the level of risk of a normal, uninjured Achilles tendon.
15. Dr. Boone opined that Plaintiff's injury was caused by a dorsiflexion of the foot and that stepping on an unlevel surface could cause a sudden dorsiflexion to occur. According to Dr. Boone, this could have happened on any uneven surface and all that was needed to potentially rupture Plaintiff's tendon was for there to be an acute dorsiflexion of the foot.
16. Plaintiff's recorded statement shows that on this occasion, he stepped back in the crosswalk. This was a maneuver he would make as a normal part of his job duties. Walking and directing traffic from the crosswalk was part of his normal job duties, as was stepping forward and backward in the crosswalk. Plaintiff mainly worked in the crosswalk, but he sometimes stepped up onto the sidewalk or off the crosswalk into the roadway. The incline change was *Page 7 
usually behind him and he was normally facing traffic. It was not unusual for Plaintiff to step back in the crosswalk as often as two to three times an hour.
17. The greater weight of the evidence shows that the Plaintiff did not trip or fall when he injured his Achilles tendon on November 20, 2007. There was no unusual or unforeseen circumstance that interrupted his work routine. Even considering Plaintiff's testimony and that of Dr. Boone's, while this action was the cause of the Plaintiff's tendon injury, the incident described was not an accident within the meaning of the Workers' Compensation Act.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable it must result from an accident within the meaning of the Workers' Compensation Act. There must be an unlooked for, an untoward event. N.C. Gen. Stat. § 97-2(6);Cody v. Snider Lumber Co., 328 N.C. 67, 399 S.E.2d 104 (1991).
2. The undersigned has carefully considered the evidence and concluded that there was no interruption of Plaintiff's work routine by an unlooked for event, and where Plaintiff was performing his normal job in the usual manner when his injury was sustained, there was no compensable accident. Therefore, Plaintiff's claim must be denied. N.C. Gen. Stat. § 97-2(6); Gunter v. Dayco Corp., 317 N.C. 670, 346 S.E.2d 395 (1986).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following: *Page 8 
 AWARD
1. Under the law, Plaintiff's claim must be and is hereby Denied.
2. Defendants shall pay the cost, including an expert witness fee of $700 to Dr. David Boone.
This the 9th day of July 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1