***********The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and oral arguments of the parties. With reference to the errors assigned by plaintiff, the Full Commission finds that plaintiff has shown good grounds to reconsider the evidence. Accordingly, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award. *********** ISSUES TO BE DETERMINED *Page 2 
Whether on December 4, 2006 plaintiff sustained a left knee injury by accident, as that term is defined under the Act, arising out of and in the course of her employment with defendant-employer and if so to what, if any, indemnity and medical compensation is she entitled.
 *********** The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing and in an executed Pre-Trial Agreement as: STIPULATIONS
1. All parties have been correctly designated, and there is no question as to mis-joinder or non-joinder of parties.
2. All parties are properly before the Industrial Commission; the Industrial Commission has jurisdiction over the parties and the subject matter; this case is subject to the North Carolina Workers' Compensation Act; and the parties are bound by and subject to the Act.
3. On December 4, 2006 and other relevant dates, an employment relationship existed between plaintiff-employee and defendant-employer.
4. On all relevant dates, plaintiff's average weekly wage was $815.30, yielding a compensation rate of $543.55.
5. Plaintiff alleges she sustained an injury by accident to her left knee arising out of and in the course of her employment with defendant-employer on December 4, 2006.
6. An Industrial Commission Form 61 was filed by defendants on December 12, 2006 and February 9, 2007. The compensability plaintiff's claim regarding her left knee has been denied by defendants.
 *********** EXHIBITS *Page 3 
At the hearing, the parties submitted the following:
1. A Packet Containing a Pre-Trial Agreement, Industrial Commission Forms and Discovery Responses, which was admitted into the record and marked as Stipulated Exhibit (1).
2. A Packet of Medical Records, which was admitted into the record and marked as Stipulated Exhibit (2).
3. A Packet of Elevator Maintenance Records, which was admitted into the record and marked as Stipulated Exhibit (3).
4. Also made part of the record is the deposition transcript of Dr. William Stephen Furr.
 ***********
Based upon the foregoing Stipulations and competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-four (44) years of age with her date of birth being September 1, 1963.
2. Prior to the hearing before the Deputy Commissioner, plaintiff had worked for defendant-employer for fifteen (15) years as an English teacher. The school in which plaintiff taught was constructed in 1926 and her classroom was on the second floor. Prior to the incident giving rise to this claim, plaintiff's normal method of accessing her second floor classroom was to use the school's elevator. In addition to the elevator, there was a staircase available to access the second floor. Plaintiff described the staircase as being narrower and taller than modern standard staircases. *Page 4 
3. On November 3, 2006, the elevator at plaintiff's school broke, and was then non-operational for a period of six (6) weeks. Therefore, during this period of maintenance, plaintiff had to break from her normal routine of using the elevator and instead, alter the manner in which she reached her second floor classroom by using the staircase. Plaintiff testified that climbing the stairs was not a part of her normal routine because she had used the elevator for years.
4. During 2006, prior to November 3rd, the school's elevator had only been out of service approximately seven non-consecutive school days.
5. On December 4, 2006, a date within the period of time in which plaintiff's normal means of accessing the second floor was non-operational, plaintiff was ascending the narrow, non-modern stairs carrying work materials in both hands which prevented her from using the stairway railing as support, when she experienced a sudden pain her left knee causing her to have to sit down. When plaintiff attempted to get up, she experienced trouble controlling her left leg because her left knee began twisting.
6. By the end of the day on December 4, 2006, plaintiff was unable to walk due to the condition of her left knee and leg.
7. On December 5, 2006, plaintiff reported the incident and her injury to the school secretary, Ms. Shawnee Holmes, who instructed her to complete a Workers' Compensation form. On said form, plaintiff described how she injured her left knee by writing "was going up stairwell, her knee popped loudly — and by the end of the day I found I could not walk. Normally, I would take the elevator, but it is broken."
8. Also on December 5, 2006, Ms. Holmes instructed plaintiff to seek medical treatment with Pro-Med and later that day, plaintiff was examined at that facility. To medical personnel at Pro-Med, plaintiff reported having injured her left knee while climbing the stairs *Page 5 
due to the elevator being non-operational. Plaintiff also reported that she had pre-existing, non-disabling degenerative arthritis in her knees. As of December 5, 2006, plaintiff had not received any treatment for her arthritis for at least ten (10) years prior to her work-place injury. Dr. David Russell at Pro-Med diagnosed plaintiff as having a knee strain and assigned climbing restrictions.
9. Due to experiencing no improvement in her symptoms, physicians at Pro-Med referred plaintiff for a left knee MRI, the results of which revealed a tear of the medial meniscus. At that time, a referral to an orthopaedist was denied by defendants, who also formally denied plaintiff's claim.
10. After her claim was denied, plaintiff sought treatment with Dr. Stephen Furr, an orthopedic surgeon. On March 22, 2007, Dr. Furr performed an arthroscopic repair of plaintiff's torn left knee meniscus.
11. Post-operatively, plaintiff continued to treat with Dr. Furr who medically excused her from work for the period of March 22, 2007 to May 9, 2007. However, plaintiff actually returned to work earlier on April 24, 2007.
12. Prior to the incident at issue, plaintiff was involved in a motor vehicle accident in 1994 and sustained bruising to her knees. As a result of the motor vehicle accident, she sought treatment with Dr. William Mason of Centralina Orthopedics, who was in the same practice as Dr. Furr. Dr. Furr testified that in 1994 plaintiff was released by Dr. Mason without any surgery or permanent disability to her knees. Additionally, plaintiff had not sought treatment at Centralina Orthopedics from October 24, 1995 to March 7, 2007, when she first presented following her knee injury at school.
13. Dr. Furr has opined to a reasonable degree of medical certainty that the incident of December 4, 2006, caused plaintiff's left knee medial meniscus tear. *Page 6 
14. Ms. Holmes testified that the school's elevator would break approximately three to four times a year. Ms. Holmes further testified that when it would break, the elevator would usually be fixed and operational the same day or, at most, within a few days. Additionally, Ms. Holmes testified that overall, it was not normal for the elevator to be out of service.
15. Dr. Windsor Eagle, the principal of plaintiff's school, testified that in his twenty-eight (28) years at the school, he could not recall the elevator being out of service for as long as the period during which plaintiff was injured. Dr. Eagle further testified that it was unusual for the elevator to be out of service, but that it did happen on occasion.
16. Mr. Greg Fox, Risk Manager for plaintiff's school system, testified that during his investigation of the incident, plaintiff informed him that she used to use the elevator, as opposed to using the stairs.
17. Mr. Kenny Chavis, Assistant Maintenance Director, maintains the work order requests for the elevator in his office. Mr. Chavis reviewed and explained the maintenance history of the elevator at plaintiff's school and testified that: on March 10, 2006, the elevator was out of service for one day; on June 1, 2006, it was out of service for one day; on August 31, 2006 it was out of service for five (5) days and repaired on September 5, 2006 because it was the Labor Day weekend; on October 20, 2006, it was out of service for one day; on October 23, 2006, it was out of service for one day; and on November 3, 2006, it was out of service until December 11, 2006. Mr. Chavis further testified that it was abnormal for the elevator to be out of service for the period of time within which plaintiff was injured. Additionally, Mr. Chavis testified that the majority of the time the elevator would be repaired on the same date of the service call. *Page 7 
18. The act of climbing the stairs as opposed to using the elevator as she had for fifteen years prior to December 4, 2006, was an interruption of plaintiff's normal work routine. Also, the use of stairs introduced new conditions to plaintiff's employment, i.e., carrying books up stairs as opposed to riding on the elevator as she had done for fifteen years prior to November 3, 2006.
19. The period of time during which plaintiff had to break from her normal routine of using the elevator was insufficient for the act of climbing the stairs to become part of her normal work routine.
20. The circumstances of plaintiff's injury on December 4, 2006 constituted an interruption of her regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.
21. On December 4, 2006, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer.
22. Based upon the credible medical and vocational evidence of record and as the result of her December 4, 2006 injury by accident and resulting surgery, plaintiff was unable to earn any wages in her position as a teacher with defendant-employer or in any other employment for the period of March 22, 2007 to April 23, 2007.
23. At the time of his deposition, Dr. Furr had not assigned a permanent partial disability rating to plaintiff's left leg. However, Dr. Furr estimated that he would assign a fifteen percent (15%) permanent partial disability rating, but also indicated that he had not come to the deposition prepared to address that issue.
 *********** *Page 8 
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act it must be the result of an "accident." N.C. Gen. Stat. § 97-2(6). An "accident" must involve more than merely carrying on the usual and customary duties in the usual way but rather involves the interruption of the normal work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Harding v. Thomas and Howard Co.,256 N.C. 427, 124 S.E.2d 109 (1963).
2. In the present case, the act of climbing the stairs as opposed to using the elevator was an interruption of plaintiff's normal work routine and introduced new conditions to plaintiff's employment. The period of time during which plaintiff had to break from her normal routine of using the elevator was insufficient for the act of climbing the stairs to become part of her normal work routine. Thus, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on December 4, 2006. N.C. Gen. Stat. § 97-2(6); Gunter v. Dayco Corporation,317 N.C. 670, 346 S.E.2d 395 (1986).
3. Based upon the credible medical and vocational evidence of record and as the result of her December 4, 2006 injury by accident and resulting surgery, plaintiff is entitled to be paid by defendant total disability compensation at the rate of $543.55 per week for the period of March 22, 2007 to April 23, 2007. N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). *Page 9 
4. At present, Dr. Furr's the estimated permanent partial disability rating is insufficiently definitive for the Full Commission to conclude that plaintiff is entitled to be paid by defendant permanent partial disability compensation. N.C. Gen. Stat. § 97-31.
5. As the result of her December 4, 2006 injury by accident and resulting surgery, plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff total disability compensation at the rate of $543.55 per week for the period of March 22, 2007 to April 23, 2007. Having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Due to the current indefinite nature of the permanent partial disability rating estimated by Dr. Furr, defendant shall pay for plaintiff to return to Dr. Furr for the purpose of obtaining a definitive rating. Once obtained, and subject to the attorney's fee approved herein, defendant shall then pay to plaintiff permanent partial disability compensation after calculating the appropriate amount by using her compensation rate of $543.55 and N.C. Gen. Stat. § 97-31(15). *Page 10 
3. Defendant pay for all related medical expenses incurred or to be incurred by plaintiff as the result of her December 4, 2006 injury by accident and resulting surgery, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when the medical bills have been approved according to established Industrial Commission procedures.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff.
5. Defendants shall pay the costs.
This the 31st day of July 2009.
S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
DISSENTING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 11