ROY N. MOORE (EMPLOYEE) v. ENGINEERING & SALES COMPANY (EMPLOYER), AND ST. PAUL MERCURY INDEMNITY COMPANY (CARRIER).

(Filed 23 November, 1938.)

### 1. Master and Servant § 55d—

The Industrial Commission is charged with the duty and has sole jurisdiction to find the facts upon the evidence, and its findings are conclusive on the courts when supported by any competent evidence.

2. **Same—**

When a conclusion of the Industrial Commission involves mixed questions of law and fact it will be presumed that the question of fact was found in accord with the conclusion, and where there is evidence to support such finding, the statement will be reviewed only in its legal aspect.

3. **Master and Servant § 40d—Evidence held sufficient to support findings that hernia resulted from "accident."**

The evidence disclosed that claimant was a foreman, but was also required to do manual labor in the prosecution of the employer's business of installing plumbing; that on the job in question other employees had been laid off and claimant ordered to complete the job with but one laborer; that in the prosecution of the work claimant and the other employee were attempting to lift a steel pipe weighing from 400 to 450 pounds when claimant felt a sharp pain in his abdomen; that it was later ascertained that claimant had suffered a hernia, and that prior to that time claimant had been doing the same general type of work, but with different type of materials and had not theretofore lifted pipes of this type or weight. *Held:* The evidence supports the inference that the routine had been interrupted by the discharge of all other employees on the job, resulting in claimant's having to lift weights he had never lifted before, and that therefore claimant's injury resulted from the introduction of unusual conditions constituting an "accident" within the meaning of the Compensation Act, and not from the usual risks and hazards of his occupation. *Neely v. Statesville,* 212 N. C., 365, and *Slade v. Hosiery Mills,* 209 N. C., 823, cited and distinguished. Whether an injury must result from the application of some external force in order to constitute an "accident" within the meaning of the statute, *quære.*

4. **Master and Servant § 40c—Evidence held sufficient to support finding that hernia occurred suddenly after the accident.**

The evidence disclosed that claimant felt a severe pain in his abdomen while attempting to lift a heavy weight; that the day after the accident a physician examined him and found an enlargement of the left inguinal ring and a bulging of the abdominal wall, but no protrusion necessary to constitute a hernia, but that this physician prescribed the device usually used for hernia; that eighteen days thereafter another physician found hernia according to the strictest medical definition, but that the hernia sac would disappear on cessation of strain. *Held:* The evidence sustains the conclusion that claimant was suffering from a lesion in the vicinity of the left inguinal ring at the time of the examination on the day after the accident, and that at that time the process of protrusion down through the injured channel had set in, and while the time when the actual protrusion of the parts took place cannot be definitely known, the evidence discloses that the lesion occurred at the time of the accident and that actual protrusion occurred shortly thereafter, and justifies the conclusion of the Industrial Commission that the hernia appeared "suddenly" within the meaning of the statute.

APPEAL by defendants from *Olive, Special Judge,* at June Term, 1938, of WAKE. Affirmed.

MOORE *v.* SALES CO.

The plaintiff was an employee of the defendant Engineering & Sales Company, at Wilmington, North Carolina, in the construction of a post office building, engaged in plumbing. He was serving as foreman, although his duties required him to do manual labor. On 13 October, 1936, plaintiff and an employee, Sykes, were working together and were the only ones on the job that day. Plaintiff had been told by a superior, Barnes, to lay off all labor, and for Sykes and plaintiff to "handle the job." In compliance with these orders, plaintiff and Sykes were lifting a four-inch steel pipe which weighed from 400 to 450 pounds, when plaintiff felt a severe pain in the lower abdomen. Plaintiff says that he could not tell whether he slipped or not because of the pain. He immediately went to Dr. McEachern, who, plaintiff says, pronounced it hernia, and bandaged the parts and told him he would have to wear a truss. After his visit to the doctor, plaintiff went immediately to his room and since then has not been able to follow his usual occupation or do any manual labor at all, nor to find any work of the kind that he had been equipped to do before his injury. Plaintiff further testified that he had never had any indication that he was afflicted with hernia before this time, and had no reason to believe that he had hernia; that he had been previously examined by Dr. Cone, who found no hernia, and got an insurance policy which is now in force.

Plaintiff came to Raleigh on 31 October and was examined by Dr. Paul Neal, who found pronounced hernia through the left inguinal ring.

Plaintiff testified that he had been doing the same general type of work but using a different type of material up to that time; that he had not lifted pipes of this type or weight before.

Plaintiff said he had pains in his right side as well as the left, but it was the left side that the doctor bandaged up. The first morning he went to see Dr. McEachern he was hurting so badly he could not tell which side and went to him for an examination. Plaintiff now wears a truss, which the company bought, and has been advised by physicians that he must not do heavy manual labor.

J. P. Sykes testified that he was on the same job with plaintiff. They had laid off some labor there on the job and that increased the work on those remaining there. On 13 October, 1936, witness and plaintiff were picking up a four-inch pipe, 20 or 22 feet in length, and laying it on a platform. Moore, the plaintiff, "grabbed his side" after they got it on the platform and said he had hurt himself. He went out to the doctor, and when witness saw him next he was bandaged up. The weight of the pipe was 400 or 450 pounds.

Dr. Kemp Neal stated he examined the plaintiff on 22 March, 1937, and found at that time he had an inguinal hernia on both sides, the right side being worse than the left. There was a definite bulging at the

external inguinal canal on both sides—came out considerably. Witness did not think plaintiff could do manual labor without danger of jeopardizing his life, in that he might get a strangulation. Witness thought an operation necessary; was of opinion that such hernia as he found existing in plaintiff could be caused by sudden strain or lifting too heavy weight, considering there was a predisposing weakness. When he examined plaintiff in March, witness found a hernia sac on each side but it slipped back; it would come out upon straining but go back into the abdominal cavity. There was a real hernia on the left but it would disappear upon cessation of straining. Witness stated that even with a truss plaintiff would not be able to do the same kind of work or lift weights alleged to have been lifted, because there is a lot of abdominal pressure brought to bear when a person lifts that much weight; that the pressure is tremendous.

On examination by Mr. Lassiter, the witness stated that the opening in the right ring was about a half inch in diameter, neck of the sac, and it came down about a half inch into the scrotum. The left one came just to the external ring and jumped back. From his examination there was no way of telling whether or not the enlargement or hernia on either side had been gradual. Tenderness and discoloration, if they existed, had disappeared when he saw the plaintiff. Witness stated that an enlargement of the inguinal ring has a definite meaning in the medical profession as distinguished from hernia.

Dr. McEachern testified that he, on 13 October, 1936, examined the plaintiff. Plaintiff gave a history of having done some heavy lifting on 12 October, the day previous, and said he developed a severe pain in the lower left part of his abdomen. Witness examined him for abdominal conditions and for hernia. Witness found an enlargement of the left inguinal ring; with a slight bulge in that area, but no actual protrusion. Witness stated that the medical profession generally recognizes a distinction between an enlargement of the inguinal ring and a hernia or rupture. Subsequently, the witness saw the plaintiff on 14, 15, 17, and 22 October, 1936. On two or three of those days the diagnosis and findings were exactly the same as the first day: Normal right and enlarged left. The examination on 13 October, 1936, demonstrated a bulging of his abdominal wall, most marked in the region of his left external inguinal ring. Patient was strapped tightly with a pad over the bulging area and was advised to do no heavy lifting.

Witness stated that the enlargement of an inguinal ring in layman's language is the beginning of a rupture; that in this case there was already noticeable to him, on examining the plaintiff, a noticeable bulge; that after treatment that bulge would have continued to grow if he continued to do heavy lifting or work which increased to the same extent

his intra-abdominal pressure. That he treated the plaintiff by putting on a spring truss and advised an operation. On redirect examination by Mr. Lassiter, witness stated it would have required a subsequent strain to have produced a real hernia on the left side. In witness' opinion, there was in this case a weakening of the external inguinal ring at that point, allowing a bulge, which could not be construed as a hernia; that a hernia, as usually defined in medicine, means an actual protrusion. Witness supposed it might be a question of degree; that it depended on whether you classify a bulge as a protrusion or not.

Dr. Paul Neal testified that he examined the plaintiff on 31 October and found hernia through the left inguinal ring. He further stated that he saw the plaintiff again in March and at that time he had a hernia on both sides. Witness found that the hernia would protrude or slip back according to the degree of abdominal pressure.

Certain stipulations were made by the parties, to which it is not necessary to refer.

Upon the foregoing evidence, the Hearing Commissioner of the Industrial Commission, found that the plaintiff had sustained an injury by accident, arising out of and in the course of his regular employment, resulting in a hernia on 12 October, 1936, while lifting one end of an iron pipe, which hernia appeared suddenly and immediately following the accident, and that the hernia did not exist prior to the accident, for which compensation is claimed, and, thereupon, made an award to the plaintiff; and upon a hearing by the Full Commission, the latter affirmed the findings and conclusions of the Hearing Commissioner, but modified the award because of additional evidence. From the order of the Industrial Commission, the defendants appealed to the Superior Court of Wake County, where the order of the Industrial Commission was affirmed, and from this judgment defendants appealed.

The defendants made three exceptions to the judgment in the Superior Court—the same which they had made to the award of the Commission: First, that the judgment was erroneous in that there was no evidence in the record that the plaintiff sustained "an injury by accident" or that there was "an injury by accident" resulting in hernia, as required by the Workmen's Compensation Act. Second, that the judgment is erroneous for the reason that there is no evidence in the record that there was any hernia or rupture which appeared "suddenly" as required by the statute. Third, that there was error in affirming the award of the Industrial Commission, for the reason that there is no evidence in the record that any hernia or rupture immediately followed any accident, as required by the statute.

*Shepherd & Shepherd and Hackler & Allen for plaintiff, appellee.*
*Bailey & Lassiter for defendants, appellants.*

SEAWELL, J.   The defendants in this case insist that the facts are not in dispute and, therefore, the findings of the Industrial Commission are propositions of law not conclusive upon the appellate court.   There are some stipulations in the record, but we find none covering the vital points of the controversy presented on the appeal.   All facts relating to the controversy may be considered disputed until settled by proper authority. The Industrial Commission has been charged with that duty and has been given sole jurisdiction to find the facts upon the evidence, and there is no simpler way to express the limitations upon this Court than to repeat, in the familiar formula, that this Court is bound by the findings of fact made by the Industrial Commission, where there is any competent evidence to support them.   *Nissen v. Winston-Salem,* 206 N. C., 888, 893; *Hildebrand v. Furniture Co.,* 212 N. C., 100.   Where mixed questions of fact and law are presented to the Commission, and a conclusion stated involving both, it will be presumed that the question of fact was passed upon and found in agreement with the conclusion stated, and where there is evidence to support the finding, the statement will be reviewed only in its legal aspect.

Is there any evidence in the record that the plaintiff sustained the injury complained of as "an injury by accident," as required by the statute?

1. The authority of *Neely v. Statesville,* 212 N. C., 365, and *Slade v. Hosiery Mills,* 209 N. C., 823, in each of which compensation was denied, is invoked as controlling the case at bar.   This could be so only to the extent that the cases were on all-fours, since the *Neely case, supra,* and the *Slade case, supra,* merely applied well known principles of law to the circumstances peculiar to those cases.   And we think there is a substantial difference between the facts of the case at bar and those passed upon in the cited cases, which make the latter inapplicable here.

In the *Slade case, supra,* the Court said of plaintiff: "He was pursuing the general routine of his employment.   Nothing unusual or unexpected took place at the mill.   The weather was hot, but not excessively so.   The case is free from 'injury by accident,' as this phrase is used in the Workmen's Compensation Act."   A similar statement was made in the *Neely case, supra,* after careful analysis.

A close perusal of the evidence in these two cases fully bears out the conclusion at which the court arrived.   While we do not attempt a point by point comparison between these cases and the case at bar, there are important differences which, in our opinion, distinguish them at critical points.

In the case at bar the evidence discloses that while the operation of handling and lifting pipes was done in the ordinary manner, and even that the plaintiff had lifted pipes in that way before, two things occurred

which, taken together, were out of the ordinary, and are sufficient, we think, to bring into the transaction the element of unusualness and unexpectedness from which accident might be inferred. In this particular case, by order of a superior, all other employees except plaintiff and Sykes were discharged, and these were left alone to do the heavy lifting. While Sykes had handled that type of pipe and perhaps piping of that weight before, the plaintiff had not. On the contrary, he was required to lift piping of a type and of a weight he had never before lifted, and it may be inferred from the testimony of Sykes that this was caused by the laying off of all other employees, which left them short-handed. From the evidence, his effort to lift the pipe was immediately followed by an injury.

In the case at bar, there is in the foregoing sufficient evidence of the interruption of the routine of work, and the introduction thereby of unusual conditions likely to result in unexpected consequences, and these were of such a character as to justify the Industrial Commission in finding that plaintiff's injury was the result of accident.

2. As a refinement of their objection to the finding of the Commission that the plaintiff suffered an injury by accident, the defendants further urge that whatever injury occurred to the plaintiff must not itself be considered as a part of the accident; that injury by accident, within the meaning of the statute, means injury by an accident the circumstances and conditions of which are complete outside of the body, and the injury must be brought about by the application of some external force.

The present case does not seem to require a discussion of this contention, since we think the evidence justified the Industrial Commission in finding that the injury sustained by the plaintiff was an injury by accident in which the fortuitous and unexpected happenings arose from the changed conditions in which the plaintiff was required to work. But the Court is not prepared to say that there are no conceivable conditions under which the breaking down of body tissues might not become a constituent element of accident under the present statute. We leave that question to be determined when directly presented upon the record.

3. Perhaps because the origin of a particular inguinal hernia is often baffling to the surgeon, and he is sometimes at a loss to know whether it is an old condition or one of recent origin, and perhaps also to give assurance that awards are made only in cases of undoubted merit, the statute requires that to be compensable the hernia must have appeared suddenly. The defendants contend that since the examination of Dr. McEachern on the day after the alleged injury showed only an enlarged left inguinal ring and no actual protrusion through it of any "organ or part," and since it was as much as 18 days later, upon the examination of Dr. Paul

Neal, a hernia was found, the hernia did not appear suddenly as required by the statute, but gradually developed during this period.

We note that Dr. McEachern testified that plaintiff came to him complaining of pain in the lower left quadrant of the abdomen after having lifted a heavy body. His examination showed an enlargement of the inguinal ring and a bulge of the abdominal wall, most marked in that region. He strapped the left side and prescribed the wearing of a truss —a device commonly used to prevent the protrusion of the intestine or other part through the ring. He further advised an operation. Notwithstanding the restraining bandages, 18 days later Dr. Paul Neal found hernia, according to the strictest medical definition—an actual protrusion through the left inguinal ring. Of course, it did not "suddenly" appear at this examination. It had been there some time before —how long we do not know. At a subsequent later examination by Dr. Kemp Neal, as testified by Dr. Kemp Neal, there was a real hernia, but the hernia sac would disappear on cessation of strain. Thus, it appears that a continuous protrusion is not necessary to constitute hernia, at least in its early stages; otherwise, the Industrial Commission might be baffled with the problem "now you have it and now you don't." It is to be noted, too, that Dr. McEachern did not attribute the bulge around the left inguinal ring to inflammation or swelling.

From this evidence it is difficult to avoid the conclusion that plaintiff was at the time he went to Dr. McEachern, the next day after the accident, suffering from a lesion in the vicinity of the left inguinal ring, and the process of protrusion down through the injured inguinal channel had already set in; and Dr. McEachern recognized the necessity of immediately applying the usual device used in cases of hernia. The exact time when the actual protrusion of the parts took place is not definitely known. It was some time in the short period between 13 October and 31 October. The real injury suffered by the plaintiff was the lesion or condition brought about, by reason of which the abdominal walls can no longer retain the viscus, and a statute evidently devised to secure plenary evidence of the existence of hernia should be satisfied with its appearance in the manner indicated in the testimony, and we think the Industrial Commission was justified upon this evidence in concluding that the hernia appeared "suddenly" within the meaning of the statute.

We find no error in the judgment of the court below, and it is

Affirmed.