***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Phillips, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and of the subject matter.
2. Plaintiff worked for Toolcraft, Inc., on December 30, 2002.
3. Defendant-carrier AmComp provided a valid and effective policy of workers' compensation insurance to defendant-employer Toolcraft, Inc., on December 30, 2002.
4. The parties stipulate the following documents into evidence:
a. Plaintiff's medical records; and,
b. Industrial Commission Forms.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On December 30, 2002, plaintiff was employed as a mill operator for defendant-employer, a manufacturing company.
2. Plaintiff suffered a hernia in his abdominal area while lifting a cast iron block on December 30, 2002. He testified at the hearing before the Deputy Commissioner:
 [A]s I was working with a seemly huge block of cast iron which had to be sort of surface ground, and it was near the grinder . . . and when I picked this piece of cast iron up and moved to the right with it as I swing it onto the magnetic table of the grinder, something had popped — I mean a sharp pain in the groin like a Charley horse or whatever you — it's hard to describe — a very sharp pain, and it left me with a burning sensation. . . .
The Full Commission finds this testimony to be credible and therefore finds as facts the matters therein discussed.
3. Plaintiff's supervisor, William Bush, testified, and the Full Commission finds such testimony to be credible and thus finds as fact: (Q. was asked by plaintiff, appearing pro se.)
 Q. At the — what was your title at the time of the injury that I — had taken place at the Toolcraft department?
A. Tool room supervisor.
Q. You were my supervisor?
A. Yes, I was.
 Q. Okay. I had reported — you were there at the time I — were you not?
A. Yes, I was.
 Q. And did I not come to you and report by lifting a heavy piece of cast iron, that I had done something to my stomach and I was in bad cramp and pain?
A. Yes, you did.
 Q. And I asked you if I could leave early that day and go rest, to go home, but I would like to have it put on record, did I not?
A. Yes.
Q. That's proper procedure of Toolcraft?
A. That's procedure.
 Q. And then would you — could you remember — or do you remember what the next day occurred?
 A. The next day, you showed me a spot on your lower stomach, I guess you could call it, that you had a place that was protruding out, and I told you to go to the clinic.
 Q. Which I did. And I believe that's really all I needed from — a statement, was that the proper procedure had been followed.
A. Exactly.
 Q. And as the weeks and months went on, did I come back to you at any time?
A. Continuously.
Q. Complaining of the same injury?
A. The same injury, same place.
 Q. Same pain. And I had showed you the protrusion or the lump on my lower stomach, or whatever you want to call it — abdominal?
A. Yes.
Cross-examination by the attorney for the defense established that plaintiff had suffered no accidents prior to December 30, 2001, nor had plaintiff complained of any pain or problems prior thereto.
4. Examination of the supervisor by Deputy Commissioner Phillips established the following, which the Full Commission finds as facts: (Q. by Deputy Commissioner Phillips.)
 Q. Did — you stated in direct examination that you saw a protrusion or something. Describe to me what you did see, Mr. Bush.
 A. Okay. It was like in the lower or the — in the abdominal region, it was like —
Q. Was that on the right side of his abdomen?
 A. I'm not sure which side it was on, but I just know he showed me. It would pop out about, oh, I would say, a good half inch or three-quarter inch out, and he would take his finger and push it back in and it would go in and stay there for a while, and then later on, it would come back out again. I personally — may it please the Court, I told him that he could possibly have a hernia, that he needs to go to the doctor. I'm not a doctor but — I mean I've been around a long time.
*****
 Q. How long do you say Mr. Dutton complained of this condition that you're describing?
A. He complained until he got it fixed.
 Q. And what do you mean when you say "he got it fixed"?
 A. I mean he complained constantly about the pain and the problem and —
Q. How did he get it fixed?
 A. Well, he finally went, I think, to the hospital to have an operation.
5. Plaintiff's co-worker, Walter Sluder, testified, and the Full Commission finds such testimony to be credible and thus finds as fact: (Q., again, was asked by plaintiff, appearing pro se.)
 Q. Mr. Sluder, you — your job title — or your department of work at Toolcraft was where? What was your job there at Toolcraft?
A. I run grinders.
 Q. Grinders. And is there a certain section of the building — or a certain place in the building that these grinders and things are?
A. Oh, yes.
 Q. Okay. Well, the reason I ask is because at the time of the injury, you were running which machine?
A. The G (phonetic) grinder.
 Q. And this G grinder stands approximately how far from the machine I was running?
A. Four or five feet, maybe.
 Q. Okay. Now, if you would, I'd like you to just tell the Court of the injury or what you saw yourself while you were there at the G grinder.
 A. I seen you have the big part, and you were just kind of struggling to lift it — you know, it was heavy. And then all of a sudden, you said something started hurting you. Then after that for days, I kept saying, "Larry, you need to get this thing fixed." You remember?
 Q. Yeah. Well — Okay. Did you — or also I had shown you the protrusion and asked your opinion because I was a little scared about it, and I asked you —
A. Yes.
Q. — and you had also seen the bulge and —?
A. Yes, I did.
6. Defendants admitted that plaintiff suffered an injury by accident on December 30, 2002, and provided payment of medical expenses. Until September, 2003, plaintiff had not missed more than seven days of work as a result of his December 30, 2002, injury, and was therefore not entitled to benefits pursuant to N.C. Gen. Stat. § 97-28.
7. Following plaintiff's December 30, 2002, accident Toolcraft sent him to treat with McDowell Family Medical Associates on December 31, 2002.
8. On December 31, 2002, the medical records noted that plaintiff had a small palpable mass that was located approximately 3 cm from under the umbilical area to the left.
The medical record goes on to say:
 This mass does appear to be right under the epidermis, located in the adipose tissue. Upon further investigation, patient states that this area has been there for quite some time but does state that his pain is in and around the area. He does elicit discomfort with facial grimacing noticed on palpation of the abdomen.
The initial diagnosis was abdominal muscular strain. Plaintiff was given muscle relaxers and pain killer, was told to follow up with Dr. Fowler in the next two to three days, and was placed out of work until that time.
6. Plaintiff was examined at McDowell Family Medical Center on January 2, 2003, by Dr. William Fowler in follow up. Dr. Fowler performed an abdominal examination on January 2, 2003, finding trace tenderness remaining in the place in question. Dr. Fowler stated that the problem had almost completely resolved and released plaintiff to return to regular, full-duty work as of January 6, 2003. Plaintiff returned to regular, full-duty work with Toolcraft at that time.
7. Plaintiff returned to McDowell Family Medical Center three months later, on April 9, 2003, with continued complaints of abdominal pain and of tenderness. Plaintiff was seen by Dr. Joshua Hand, whose notes concerning his examination of plaintiff's abdomen are as follows:
 Soft, non-distended. There is some mild tenderness to palpation on the abdominal wall musculature just superior to the umbilicus and just to the right of the midline. There is no guarding or rebound tenderness. No masses. No abdominal wall defect appreciated. No mass or bulge appreciated with valsalva.
8. On April 29, 2003, plaintiff went back to Dr. Hand for re-evaluation. Dr. Hand reported no masses or bulges were found with valsalva.
9. Plaintiff was released to return to full-duty work on April 30, 2003, and returned to full-duty work on that date.
10. On September 22, 2003, plaintiff returned to McDowell Family Medical with continued complaints of abdominal pain and a bulge he localized to his upper abdomen. It was on this occasion that Dr. Hand finally diagnosed a hernia.
11. Plaintiff testified at hearing before the Deputy Commissioner, and the Full Commission finds as fact, that the bulge later diagnosed as a hernia was present immediately after the December 30, 2002, incident. Witnesses for plaintiff at the hearing before the Deputy Commissioner, William Bush and Walt Sluder, testified that they noticed a bulge on plaintiff's abdominal area immediately after the incident. This testimony regarding the appearance of the hernia is consistent with the medical evidence.
12. Plaintiff underwent repair of the ventral hernia on September 24, 2003, and following recovery, returned to full-duty work with Toolcraft on or about November 18, 2003.
13. On October 15, 2003, plaintiff filed a Form 18, Notice of Accidentto Employer and Claim of Employee, alleging that he had suffered a hernia as a result of the December 30, 2002, lifting incident. Plaintiff sought benefits for wage compensation and medical expenses related to the repair of the hernia diagnosed on September 22, 2003.
14. On October 23, 2003, a Form 61 was filed by defendants denying that the hernia diagnosed on September 22, 2003, was compensable as related to the December 30, 2002, injury.
15. The Full Commission finds that the small abdominal mass noted in plaintiff's December 31, 2002, medical records was a hernia and was not confirmed by the physicians chosen by defendants until September 2003. It is common knowledge that hernias often begin with abdominal pain and concurrent observation of an abdominal "mass" or "lump".
16. The WebMD dictionary definition of a hernia is:
 An inguinal hernia is a bulge of soft tissue through a weak spot in the abdominal wall in the groin area. Inguinal hernias can occur in one or both sides of the groin at the same time or at different times. The bulge usually contains tissue lining the inside of the abdomen (peritoneum) and may include fatty tissue from inside the abdomen, a loop of intestine, or fluid (ascites).
Symptoms of an inguinal hernia may include:
 • A tender bulge in the groin or scrotum. The bulge may appear gradually over a period of several weeks, or it may form suddenly after you have been lifting heavy weights or coughing, bending, straining, or laughing. Many hernias flatten when you lie down. In infants, a hernia may bulge when the child cries or moves around.
 • Groin discomfort or pain. The discomfort may be worse when you bend or lift; it may be felt in the scrotum. Some hernias may not cause pain.
17. It is common knowledge that physicians sometimes misdiagnose hernias. It is also common knowledge that some hernias develop suddenly with the onset of pain when lifting. As is shown in the testimony of plaintiff's supervisor and co-worker, even a layman can recognize a hernia when there is heavy lifting followed by abdominal pain with the presence of a bulge or protuding tissues in the area of the pain.
18. Plaintiff's restricted activities, as prescribed by the physicians chosen by defendants, sustained plaintiff temporarily such that plaintiff did not experience debilitating or full-blown herniation until weeks after he resumed full-duty, regular work. Further, the December 30, 2002, injury by accident was the only accident that plaintiff had sustained.
19. Plaintiff sustained an injury by accident for purposes of the Workers' Compensation Act when plaintiff was required to lift and swing an unusually large piece of cast iron onto a grinder, which constituted an interruption of his work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.
20. The Full Commission finds: (a) that plaintiff suffered an injury resulting in hernia or rupture; (b) that the hernia or rupture appeared suddenly; (c) that the hernia or rupture immediately followed an accident; and, (d) the hernia or rupture did not exist prior to the accident for which compensation is claimed. Thus, plaintiff has shown by the greater weight of the evidence that he sustained a hernia arising out of and in the course and scope of his employment with defendant-employer and is entitled to workers' compensation benefits related to the December 30, 2002, injury by accident resulting in a diagnosed hernia.
21. The Full Commission finds as fact that the physicians chosen by defendants were mistaken when they repeatedly diagnosed only abdominal muscular strain in plaintiff's case.
22. Based on the Industrial Commission forms submitted by defendants, the Full Commission finds that plaintiff had an average weekly wage of $640.00 at the time of his injury, which yields a weekly compensation rate of $426.67.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Pursuant to N.C. Gen. Stat. § 97-2(18), in all claims for compensation for hernia or rupture, resulting from injury by accident arising out of and in the course of a claimant's employment, it must be proved to the satisfaction of the Industrial Commission: (a) that there was an injury resulting in hernia or rupture; (b) that the hernia or rupture appeared suddenly; (c) that the hernia or rupture immediately followed an accident, or is the direct result of a specific traumatic incident of the work assigned; and, (d) the hernia or rupture did not exist prior to the accident for which compensation is claimed. N.C. Gen. Stat. § 97-2(18).
2. In cases involving back injury or hernia, the elements constituting accident are an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Moore v. Engineering Sales Co., 214 N.C. 424, 199 S.E. 605
(1938). The claimant in Moore was a plumbing foreman who lifted a heavy pipe and felt a pain in his abdomen. He consulted a physician, who found a bulge but no protrusion. Eighteen days later, an actual hernia was found. The North Carolina Supreme Court affirmed the Commission's award of compensation, finding that the accident consisted of an interruption of the work routine and held:
 The real injury suffered by the plaintiff was the lesion or condition brought about, by reason of which the abdominal walls can no longer retain the viscus, and a statute evidently devised to secure plenary evidence of the existence of hernia should be satisfied with its appearance in the manner indicated in the testimony, and we think the Industrial Commission was justified upon this evidence in concluding that the hernia appeared "suddenly" within the meaning of the statute.
Id. at 428, 609.
3. In light of Moore, and pursuant to N.C. Gen. Stat. § 97-2(18), the Full Commission has found: (a) that plaintiff suffered an injury resulting in hernia or rupture; (b) that the hernia or rupture appeared suddenly; (c) that the hernia or rupture immediately followed an accident; and, (d) the hernia or rupture did not exist prior to the accident for which compensation is claimed. N.C. Gen. Stat. § 97-2(18). Thus, plaintiff has shown by the greater weight of the evidence that he sustained a hernia arising out of and in the course and scope of his employment with defendant-employer. Id.
4. Defendants argue that since the physicians they chose did not diagnose a hernia until September 22, 2003, the hernia cannot be related to the December 30, 2002, accident they admitted as compensable under the N.C. Workers Compensation Act. The North Carolina Supreme Court has recognized that there are some instances when medical testimony need not be presented in order for the Industrial Commission or other trial body to find causation of a medical condition. As the Supreme Court said inClick v. Freight Carriers, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980):
 We do not rule out the possibility that a disc injury case may arise in the future wherein the facts are so simple, uncontradictory, **392 and obvious as to permit a finding of a causal relationship between an accident and the injury absent expert opinion evidence. For instance, in Tickle v. Insulating Co., 8 N.C.App. 5, 173 S.E.2d 491 (1970), the Court of Appeals upheld a workmen's compensation award for temporary total disability resulting from a nonspecific lower back injury (not a disc injury), despite the lack of expert medical evidence linking the back condition with the work place accident. The court held evidence that the onset pain of which plaintiff complained was simultaneous with the accident, along with other evidence in the case, was sufficient to allow the trier of fact to draw a reasonable inference that the injury was the proximate result of the accident. The Supreme Court of Oregon has noted that the "distinguishing features" of most compensation cases holding medical testimony unnecessary to make a prima facie case of causation include: "(A)n uncomplicated situation, the immediate appearance of symptoms, the prompt reporting of the occurrence by the workman to his superior and consultation with a physician, and the fact that the plaintiff was theretofore in good health and free from any disability of the kind involved. A further relevant factor is the absence of expert testimony that the alleged precipitating event could not have been the cause of the injury. . . ." Uris v. State Compensation Department, 247 Or. 420, 426, 427 P.2d 753, 756 (1967) (citations omitted).
Click at 167, 391.
All the necessary ingredients found by the Oregon Supreme Court to make medical testimony unnecessary are present in this case. In fact, it was defense counsel who brought out the fact that that plaintiff had suffered no accidents prior to December 30, 2001, nor had plaintiff complained of any pain or problems prior thereto.
5. Plaintiff is entitled to receive temporary total disability compensation in the amount of $426.67 per week from September 24, 2003, the date of his hernia repair surgery, through November 18, 2003, the date he returned to full duty work with defendant-employer. N.C. Gen. Stat. § 97-29. Since this is longer than 21 days, plaintiff is also entitled to compensation for the earlier 7 days when he was written out of work.
6. Plaintiff is entitled to receive medical compensation reasonably required to effect a cure, give relief, or lessen the period of disability related to the medical care for his compensable hernia. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation in the amount of $426.67 per week from September 24, 2003, the date of plaintiff's hernia repair surgery, through November 18, 2003, the date he returned to full duty work with defendant-employer, plus the first 7 days plaintiff was written out of work. Because such compensation has accrued, defendants shall pay plaintiff in lump sum. Defendant shall pay interest at the rate of 8% per year from March 24, 2004.
2. Defendants shall provide medical compensation to plaintiff that is reasonably required to effect a cure, give relief, or lessen the period of plaintiff's disability related to the medical care for his compensable hernia.
3. Defendants shall pay the costs due the Commission.
This 11th day of February 2005.
 S/_________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_________________ BUCK LATTIMORE CHAIRMAN