***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff and the employer at all times relevant to this claim. *Page 2 
3. This is a claim for disability and medical compensation due to a hernia which plaintiff contends she sustained on July 20, 2005.
4. Plaintiff contends that she has been disabled due to this hernia and/or the exacerbation of her COPD, which she contends is a compensable consequence of this hernia, since on or about February 15, 2006.
5. Plaintiff's average weekly wage is sufficient to entitle her to the maximum compensation rate for 2005.
6. Plaintiff has received Accident Sickness benefits in the gross (pre-tax) amount of $21,319.95 from February 15, 2006 through February 12, 2007. The parties agree that pursuant to Church v. Baxter TravenolLabs, Inc., 104 N.C. App. 411, 409 S.E.2d 715 (1991), the credit will be calculated as follows: 75% of the gross Accident Sickness benefits paid will be credited toward and will therefore reduce the amount of TTD owed on a week-by-week basis for the number of weeks the Accident 
Sickness benefits were paid; however, the attorney's fee is 25% of the weekly benefits before the reduction for the Accident Sickness credit.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff, Brenda Hinson, was born on January 23, 1952 and was 55 years old at the time of the hearing before the Deputy Commissioner. As of the date of the hearing, Mrs. Hinson had been working at Goodyear for 29 years. Mrs. Hinson was a forklift operator at Goodyear. *Page 3 
2. On July 20, 2005, Mrs. Hinson was driving her forklift hauling a pallet of truck tires from the sorting area to the labeling area when about four tires fell off the pallet. Mrs. Hinson stopped her forklift and got off her truck to pick up the tires that had fallen. The tires were truck tires that weighed about 60-65 pounds each. As she was lifting the tires, Mrs. Hinson felt sharp, knife-like pain in her abdominal area. This incident was documented by Mrs. Hinson on an Associate Report of Incident on July 20, 2005.
3. Mrs. Hinson was evaluated at the plant dispensary on July 20, 2005 by a nurse. Mrs. Hinson was sent back to work and instructed to return to the dispensary the next day for an evaluation by the plant physician's assistant, Lana Van Story.
4. Mrs. Hinson returned to the plant dispensary as instructed on July 21, 2005. At that time, she was still having abdominal pain and tenderness. She was examined by Ms. Van Story, who gave her restrictions on lifting and bending for two weeks. Ms. Van Story was unable to feel an acute hernia on July 21, 2005, but she noted that she did feel something, which she thought was a nodule or scar tissue. Ms. Van Story also noted that Mrs. Hinson had tenderness in both her right upper quadrant and left upper quadrant. Even though Ms. Van Story could not feel an acute hernia, she contacted the workers' compensation carrier to request authorization for Mrs. Hinson to have a surgical consult regarding the abdominal injury she sustained on July 20, 2005.
5. The record show that it is not uncommon for a healthcare provider to be unable to feel a hernia one day after the hernia injury because acute hernias are not always clinically apparent other than the symptom of discomfort and the symptoms associated with the occurrence. Additionally, the initial hernia may be relatively small and not necessarily palpable. Further, the bulges associated with hernias typically do not develop immediately. *Page 4 
6. Mrs. Hinson was unable to work as a forklift operator with the restrictions that Ms. Van Story gave her on July 21, 2005, so she "basically just sat around" at work for two weeks. During these two weeks, Mrs. Hinson continued to experience abdominal pain.
7. Mrs. Hinson's husband, Warren Hinson, observed her worsening abdominal symptoms following her injury at work on July 20, 2005. Mr. Hinson also observed a bulge or protrusion in Mrs. Hinson's abdomen, which was not there before July 20, 2005 and which developed within a week or so after the July 20, 2005 lifting incident. Eventually, the abdominal bulge or protrusion could be seen through Mrs. Hinson's clothes.
8. After her work restrictions expired on August 4, 2005, Mrs. Hinson returned to work as a forklift operator. She was unable to lift any tires due to her ongoing abdominal pain, so she could not perform all of the essential functions of her job, such as picking up the tires when they fell off the pallet. Mrs. Hinson also had trouble driving the forklift truck because the continuous bouncing up and down that the driver feels while driving the truck caused her to experience abdominal pain. Additionally, Mrs. Hinson developed a noticeable bulge in her abdominal area, which got worse over time as she continued to try to work.
9. Mrs. Hinson continued to try to work for several months, despite her worsening abdominal pain and despite her worsening abdominal bulge. Mrs. Hinson assumed that since the dispensary had examined her and had sent her back to work, it was safe to keep working. Mrs. Hinson also was waiting for confirmation that the workers' compensation carrier was authorizing a surgical consult for her abdominal injury.
10. In November of 2005, Mrs. Hinson went to see her family doctor, Dr. Wolinsky, who referred her to Dr. Strauther, a general surgeon.
11. Dr. Strauther initially evaluated Mrs. Hinson on December 13, 2005 and diagnosed *Page 5 
her with a "recurrent ventral hernia." Dr. Strauther took a history on that date and noted that Mrs. Hinson was lifting something at work a few months prior when she felt something rip in her abdomen. The term "recurrent" means that the hernia is in the same location as a previous hernia, not that it is the same hernia as the previous hernia.
12. Dr. Strauther opined, and the Full Commission so finds, that plaintiff sustained an injury resulting in a hernia on July 20, 2005 when she lifted the heavy truck tires at work and felt the sharp pain in her abdomen.
13. Right after picking up the heavy tires and feeling the sharp, knife-like pain in her abdomen, plaintiff experienced ongoing abdominal pain and tenderness, which got worse over time. She also developed a bulge in her abdomen shortly after July 20, 2005, which also got worse over time.
14. Dr. Strauther also opined, and the Full Commission so finds, that the hernia that Dr. Bryant repaired in 2003 had fully healed and was intact when Mrs. Hinson suffered the new hernia on July 20, 2005.
15. Likewise, Dr. Bryant opined, and the Full Commission so finds, that the hernia diagnosed by Dr. Strauther on December 13, 2005 was a new hernia and was not a failure of the hernia that Dr. Bryant had repaired in 2003.
16. During her hernia surgery on February 15, 2006, Mrs. Hinson developed respiratory problems, including hypoxemia and atelectasis. Both Dr. Strauther and Dr. Hayes have attributed these post-surgical respiratory problems to the February 15, 2006 hernia surgery, and the Full Commission so finds that these respiratory problems were caused by that surgery.
17. Mrs. Hinson was discharged from the hospital on February 22, 2006. Her discharge diagnosis included acute chronic obstructive pulmonary disease (COPD) exacerbation. *Page 6 
18. Dr. Strauther opined, and the Full Commission so finds, that the particular hernia repair technique that he performed exacerbated Mrs. Hinson's underlying COPD by tightening her abdomen wall such that she lost the ability to drop her diaphragm while breathing.
19. While Mrs. Hinson was still in the hospital, Dr. Strauther ordered a consult with
Dr. Dave, a pulmonologist. Dr. Dave evaluated Mrs. Hinson on February 19, 2006 and concurred with Dr. Strauther's diagnosis of "acute exacerbation of COPD."
20. While Dr. Hayes did not agree that the particular hernia repair technique was the cause of Mrs. Hinson's acute breathing problems post-surgery, the Full Commission gives more weight to the opinion of Dr. Strauther, a board-certified general surgeon who actually performed the hernia operation.
21. After her release from the hospital, Mrs. Hinson had to be put on a C-PAP (Continuous Positive Airway Pressure) machine. She also developed extreme shortness of breath and significantly diminished exercise tolerance and endurance.
22. Prior to her February 15, 2006 surgery, Mrs. Hinson did not have any breathing problems that interfered with her ability to work.
23. Additionally, based on the results of Mrs. Hinson's January 17, 2006 pre-surgery stress test, her COPD was not significantly impacting her daily functioning prior to her February 15, 2006 surgery. *Page 7 
24. Following the surgery, Mrs. Hinson developed significant breathing problems and pulmonary symptoms. As of the date of the hearing, Mrs. Hinson was experiencing extreme shortness of breath and having trouble sleeping. She was having to use supplemental oxygen at night and was having to take sleeping pills. During her hearing testimony, she had trouble catching her breath and speaking.
25. Dr. Strauther has opined, and the Full Commission so finds, that Mrs. Hinson has been unable to work since February 15, 2006 due to the decompensation of her pulmonary function that resulted from her February 15, 2006 hernia surgery.
26. While Dr. Hayes believes that Mrs. Hinson's post-surgical breathing complications should have resolved by the time she was released from the hospital, the Full Commission gives more weight to the opinions of Dr. Strauther, who has been treating and observing Mrs. Hinson.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On July 20, 2005, plaintiff sustained an injury resulting in a hernia. N.C. Gen. Stat. § 97-2(18).
2. Plaintiff's July 20, 2005 hernia appeared suddenly. N.C. Gen. Stat. § 97-2(18); Moore v. Sales Co., 214 N.C. 424, 199 S.E. 605 (1938).
3. Plaintiff's hernia immediately followed a specific traumatic incident on July 20, 2005. N.C. Gen. Stat. § 97-2(18); Fish v.Steelcase, Inc., 116 N.C. App. 703, 449 S.E.2d 233 (1994), cert.denied, 339 N.C. 737, 454 S.E.2d 650 (1995).
4. Plaintiff's July 20, 2005 hernia did not exist prior to the specific traumatic incident of July 20, 2005. N.C. Gen. Stat. § 97-2(18); Bondurant v. Estes Express Lines, Inc., 167 N.C. App. 259,606 S.E.2d 345 (2004).
5. Plaintiff sustained a compensable hernia on July 20, 2005. N.C. Gen. Stat. § 97-2(18).
6. Plaintiff became totally disabled as a result of her compensable hernia on *Page 8 
February 15, 2006 and plaintiff remains totally disabled to date as a result of the exacerbation of her underlying COPD, which is a compensable consequence of her compensable hernia. N.C. Gen. Stat. §§ 97-2(9); 97-29; Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982);Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993).
7. Plaintiff is entitled to medical compensation for all related medical expenses incurred, or to be incurred, as a result of her compensable hernia and all sequelae of that hernia, including the exacerbation of her underlying COPD. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff total disability compensation at the rate of $704.00 per week from February 15, 2006 until the present, and continuing until plaintiff returns to work or until further Order of the Commission. As much of said compensation that has accrued shall be paid in a lump sum, subject to the 25% attorney's fee awarded below.
2. A reasonable attorney's fee of twenty-five percent (25%) of the total compensation awarded to plaintiff in Paragraph 1 above is hereby approved to be paid directly to plaintiff's counsel. As much of said attorney's fee that has accrued shall be paid directly to plaintiff's counsel in a lump sum. For the ongoing attorney's fee, defendants shall pay every fourth check directly to plaintiff's counsel.
3. After deduction of the attorney's fee awarded above, defendants are entitled to take the following credit, as stipulated to by the parties: $21,319.95 (which is 75% of the gross *Page 9 
Accident Sickness benefits paid) will be credited toward and will therefore reduce the amount of TTD owed on a week-by-week basis for the number of weeks the Accident Sickness benefits were paid.
4. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as a result of her compensable hernia and all sequelae of that hernia, including the exacerbation of her underlying COPD.
5. Defendants shall pay the costs of this proceeding.
This the 3rd day of September 2008.
 S/_______________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_______________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ PAMELA T. YOUNG CHAIR *Page 1