***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and oral arguments of the parties with reference to the errors assigned by defendants. Defendants have not shown good grounds to reconsider the evidence, to receive further evidence or to rehear the parties or their representatives. Accordingly, the Full Commission AFFIRMS with minor modifications, the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing, and in a Pre-Trial Agreement which was admitted into the record and marked as Stipulated Exhibit (1) as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties stipulate that there was an employer/employee relationship at all relevant times in this matter.
4. The parties stipulate and agree that Travelers Insurance Company was the carrier on the risk on or about May 23, 2007.
5. The parties stipulated the following exhibits into evidence:
 A. Stipulated Exhibit 1 — Pre-Trial Agreement;
 B. Stipulated Exhibit 2 — Industrial Commission forms/filings, medical records, plaintiff's discovery responses, employment file, and recorded statement.
6. In addition, the defendants subsequently submitted a properly completed Form 22 and the same is admitted into evidence.
7. The contested issues to be decided by the North Carolina Industrial Commission are the following:
 A. Whether plaintiff sustained a compensable injury by accident arising out of and in the course of her employment on May 23, 2007.
 B. To what, if any, benefits is plaintiff entitled?
 *********** *Page 3 
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, Kathryn Cummings, who is 54 years old, has a high school education with some college coursework, but no degrees. Prior to working with PetSmart, plaintiff was employed as a clerk at the Hampton Inn and the Comfort Inn. She also worked as a stocker with Wal-Mart and a customer service representative/head cashier at Lowe's.
2. Prior to the injury that is the subject of this claim plaintiff had some pre-existing conditions for which she had received orthopedic treatment. Plaintiff initially presented to Wilson Orthopaedic Surgery Neurology Center on February 11, 2004, for evaluation with Dr. Vanden Bosch, an orthopedic surgeon. Plaintiff reported a five-month history of right-sided neck pain radiating into the shoulder. She also reported heavy work in her employment with Wal-Mart which precipitated her symptoms. Dr. Vanden Bosch diagnosed plaintiff with C5-6 degenerative disc disease with radiculopathy and recommended conservative treatment.
3. Plaintiff was hired by PetSmart on April 11, 2005 as a pet care associate. Her job duties included caring for the animals, waiting on customers, and cleaning her department.
4. Plaintiff returned to Wilson Orthopaedic on January 24, 2006, reporting persistent complaints of right neck and shoulder pain. Plaintiff now attributed her symptoms to her new employment with Petsmart, noting that she had to move birdcages that were at shoulder height. Dr. Vanden Bosch diagnosed plaintiff with chronic cervical pain and AC joint arthritis and continued her conservative treatment.
5. Plaintiff became pet care manager on February 13, 2006. As the manager, she still cared for animals, cleaned, and dealt with customers. She also performed managerial and *Page 4 
administrative duties, such as making employee schedules, attending meetings, and completing product orders. After February 13, 2006, plaintiff's job was 40% physical and 60% administrative duties. While plaintiff was working as manager, her rate of pay rose to $10.22 per hour for approximately 45 hours of work per week. She earned overtime for hours worked in excess of 40 per week.
6. Plaintiff returned for follow-up with Dr. Vanden Bosch on August 7, 2006, and reported an acute injury at work, stating that she was cleaning out a bird cage at the pet shop and felt a sudden pain in her left lower back. Dr. Vanden Bosch diagnosed plaintiff with acute low back pain with sciatica and recommended conservative treatment and took plaintiff out of work for about a week.
7. Plaintiff was seen at Wilson Orthopaedic on February 15, 2007. Plaintiff reported increased right-sided neck pain and pain in her right knee, but denied any new trauma. Plaintiff reported that her knee pain was exacerbated by squatting and going up and down steps, and increased as the day progressed with general work activity. Dr. Vanden Bosch diagnosed plaintiff with chondromalacia, administered a right knee injection and renewed her prescription medications.
8. Plaintiff's records reveal she refilled her Percocet prescription on March 21, 2007, and May 9, 2007. Prior to May 23, 2007, plaintiff did not miss work because of her knee pain.
9. On May 23, 2007, the date of the injury that is the subject of this claim, plaintiff was working at Petsmart and at approximately twenty minutes prior to the end of her workday, a corporate store inspector came into the store. Plaintiff inspected her area while the inspector was in the office with another manager and saw five or six buckets of fish gravel in bleach water in the wrong location creating a safety hazard. The buckets weighed in excess of 40 pounds. *Page 5 
Plaintiff began bending down and dragging the buckets across the room, as they were too heavy to lift. She had to drag each of them approximately 50 feet. As she was squatting and bending down dragging the third bucket, her right knee popped and she felt excruciating pain. Plaintiff had to sit down for a time. She eventually made her way to the freezer and placed frozen food on her knee to help the pain. Her leg went numb after about five to ten minutes; however, she was able to make her way to clock out and go home.
10. Plaintiff moved the buckets of gravel soaking in bleach water because the corporate person was about to inspect the store. Plaintiff had already asked two employees to take care of these buckets but neither had complied, and they were not around at this time. Dragging such heavy buckets of gravel and bleach water was not within her normal job responsibilities, but in order to prevent the loss of points for her store during this inspection, she moved them herself. Plaintiff had never moved the buckets when they were so full of water and gravel before this day. Although she assisted in the cleanings, she did lighter work.
11. Although conflicting evidence was offered, the Full Commission finds that normally in her position, plaintiff would have lifted no more than 10 pounds because the other employees would lift heavier things. Plaintiff's testimony concerning how her injury occurred is found to be credible.
12. Dragging the heavy buckets of gravel covered in bleach water was an unusual activity for plaintiff in her job as Pet Care area manager. Plaintiff's right knee popped while she was dragging the third bucket and she suffered immediate pain. Having to unexpectedly drag the heavy buckets of gravel and bleach water 50 feet across the floor under the circumstances constituted an interruption of plaintiff's normal routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences. Plaintiff's injury was due to an *Page 6 
accident.
13. Plaintiff was working her usual shift as Pet Care area manager. She was performing a duty that was required to be completed in her area and without another employee to perform the task, it was reasonable for plaintiff to undertake the task on her own. The time, place and circumstances brought plaintiff's injury by accident within the course of her employment.
14. At the time of injury plaintiff was performing work for the direct benefit of defendant-employer; therefore the injury arose out of her employment.
15. On the following morning, plaintiff reported the injury by phone to fellow manager Rosa Kinacki, who was the first person scheduled to be in the store. Plaintiff asked that she relay the information to the store manager, Phil Staniunas, because plaintiff was scheduled to see Dr. Vanden Bosch that morning.
16. Plaintiff's pain following the work injury was a stabbing pain that was continuous from the initial pop on May 23, 2007. She had never suffered ongoing pain like this before the injury. Plaintiff went to Wilson Orthopaedic on May 24, 2007. Medical records reflect that plaintiff reported increased right knee pain and back pain over the last month, and specifically denied any new trauma/injury. Plaintiff's diagnosis remained chondromalacia of the right knee, and Dr. Vanden Bosch continued with conservative treatment.
17. Mr. Staniunas filed the necessary paperwork for the workers' compensation claim on May 24, 2007.
18. Defendants denied plaintiff's claim pursuant to a Form 61 on the grounds that she did not sustain a compensable injury by accident arising out of and in the course of her employment. *Page 7 
19. Plaintiff was taken out of work from the date of the injury for one week. She returned around the first of June, 2007, and worked from that time through December 6, 2007, when Dr. Vanden Bosch took her out of work. During the time period of June through December, 2007, plaintiff continued to have trouble with her knee and was out of work on occasional days. Her knee got progressively worse.
20. When plaintiff returned to work in June, 2007, she performed her regular job duties. She was able to perform the work because she could delegate much of the physical work to other employees and was instructed to do so during her evaluation by Mr. Staniunas. Plaintiff was able to perform the administrative tasks in spite of her knee injury and since this was 60% of her job, she focused on these tasks. Being able to delegate the heavy work allowed plaintiff to continue working through December 6, 2007.
21. Plaintiff returned for follow-up with Dr. Vanden Bosch on July 5, 2007, reporting persistent right knee pain. Plaintiff was referred for physical therapy and released to return to work with restrictions of no squatting or climbing ladders.
22. At plaintiff's visit on August 9, 2007, she reported the injury at work on May 23, 2007. Dr. Vanden Bosch diagnosed her with right patellofemoral syndrome and administered a right knee injection.
23. Plaintiff returned on August 30, 2007, reporting no relief from the injection to the right knee. Dr. Vanden Bosch reiterated his previous diagnosis and referred her for physical therapy. Plaintiff was seen on September 27, 2007, and Dr. Vanden Bosch gave work restrictions of no lifting over 10 pounds and no squatting or climbing ladders.
24. Plaintiff returned to Wilson Orthopaedic on November 8, 2007, and Dr. Vanden Bosch referred her for MRI of the right knee. The MRI was performed on November 16, 2007, *Page 8 
and revealed chondromalacia of the patella and a possible torn posterior horn medial meniscus. Plaintiff returned on December 6, 2007, for review of the MRI. Based on plaintiff's MRI results, Dr. Vanden Bosch recommended she proceed with arthroscopy.
25. Plaintiff presented to Wilson Medical Center on January 9, 2008, where she underwent chondroplasty of the right patella for what Dr. Vanden Bosch diagnosed as chondromalacia of the patella. There was no torn medial meniscus. Plaintiff returned to Wilson Orthopaedic for post-operative treatment. Plaintiff's pain worsened following surgery, which Dr. Vanden Bosch attributed to the underlying condition of the knee.
26. Plaintiff was seen on January 31, 2008. Dr. Vanden Bosch noted plaintiff that complained of lateral knee pain, although on arthroscopy there was no pathology on that side of her knee. Plaintiff returned on February 14, 2008. Physical examination revealed no swelling and plaintiff exhibited full active and passive range of motion. Dr. Vanden Bosch continued plaintiff's conservative treatment.
27. Plaintiff returned for follow up on March 24, 2008. Physical examination was unchanged, and Dr. Vanden Bosch administered a right knee injection. On April 21, 2008, Dr. Vanden Bosch noted plaintiff's complaints had now localized over the anterior aspect of the knee. Physical examination revealed full range of motion without discomfort and no effusion or erythema was noted. Dr. Vanden Bosch diagnosed plaintiff with apparent patellar tendonitis and referred her for a course of physical therapy.
28. On June 27, 2008, plaintiff reported continued improvement of her right knee pain. Her diagnosis and treatment recommendations remained the same. Plaintiff returned on December 9, 2008 for treatment of various conditions ranging from cervical pain to continued right knee pain. Plaintiff's prescription medications were refilled and she was scheduled for a *Page 9 
two-month follow up.
29. At his deposition, Dr. Vanden Bosch opined and the Full Commission finds as fact that the condition for which he treated plaintiff after May 23, 2007, was causally related to plaintiff's injury of May 23, 2007. Dr. Vanden Bosch also opined that plaintiff was capable of returning to sedentary positions by at least February 14, 2008. However, Dr. Vanden Bosch did not communicate this opinion to plaintiff prior to his deposition.
30. Dr. Vanden Bosch opined that there was a possibility that plaintiff would need further arthroscopic surgery, possible chondroplasty and further treatment and that she had not yet reached maximum medical improvement. The treatment Dr. Vanden Bosch has provided or obtained for plaintiff for conditions related to her May 23, 2007 injury has been reasonably required to effect a cure, provide relief or lessen her disability.
31. Plaintiff received short-term disability and long-term disability benefits during the entire period she has been out of work. Plaintiff received $2,196.07 in short-term disability. In addition, plaintiff received $7,705.79 in long-term disability benefits from March 6, 2008, through the date of the hearing. Plaintiff confirmed that her disability benefits were entirely funded by PetSmart.
32. Plaintiff has not returned to work since the surgery and has not performed any job search to obtain other employment. Plaintiff's failure to look for work because she believed she had not been released to return to work was justified.
33. Plaintiff has paid the health insurance premiums and paid co-pays out of pocket for her medical treatment.
34. Based on a Form 22, plaintiff's average weekly wage was $464.67.
 *********** *Page 10 
Based upon the above stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by an accident arising out of and in the course of her employment with defendant-employer on May 23, 2007. Dragging large buckets of gravel covered with bleach water 50 feet across the floor under the circumstances of this case constituted an interruption of plaintiff's routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences. The resulting injury was an accident under the Workers' Compensation Act and arose out of and in the course of her employment. N.C. Gen. Stat. § 97-2(6);Gunter v. Dayco Corp., 317 N.C. 670, 346 S.E.2d 395 (1986).
2. Plaintiff's average weekly wage on May 23, 2007, was $464.67, yielding a compensation rate of $309.78. N.C. Gen. Stat. § 97-2(5).
3. As a result of her compensable injury, Plaintiff is entitled to payment of temporary total disability compensation, payable at the rate of $309.78 per week from December 6, 2007, through the date of Dr. Vanden Bosch's deposition on February 19, 2009 where he first communicated that plaintiff was capable of performing sedentary work. Plaintiff's disability after this date should be reserved for subsequent determination, as plaintiff has not had an opportunity to present evidence on disability since the deposition of Dr. Vanden Bosch. N.C. Gen. Stat. § 97-29.
4. As a result of her compensable injury, plaintiff has incurred and continues to incur expenses for medical treatment that is reasonably required to effect a cure, give relief, or lessen the period of disability related to her work injury. Plaintiff is entitled to payment of said expenses by defendants. N.C. Gen. Stat. §§ 97-2(19); 97-25. *Page 11 
5. Defendants are entitled to a credit for all short term and long term disability benefits paid to plaintiff through February 19, 2009. N.C. Gen. Stat. § 97-42; Foster v.Western-Electric Co., 320 N.C. 113, 357 S.E.2d 670 (1987);Evans v. AT T Technologies, Inc.,331 N.C. 78, 414 S.E.2d 503 (1992).
6. In the discretion of the Full Commission, plaintiff is not entitled to attorney fees under N.C. Gen. Stat. § 97-88.
 ***********
Based on the above stipulations, findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at a rate of $309.78 per week for the period of May 23, 2007 through February 19, 2009.
2. Defendants shall pay the medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury of May 23, 2007 and shall reimburse plaintiff for out-of-pocket expenses she incurred for medical treatment.
3. A reasonable attorney's fee of twenty-five (25%) percent of the compensation due plaintiff is approved for plaintiff's counsel and shall be paid by defendants as follows: twenty-five (25%) percent of the accrued compensation due plaintiff shall be deducted from said compensation and shall be paid in one lump sum directly to plaintiff's counsel before deduction of the credit allowed herein.
4. Defendants shall receive a credit for short-term and long-term disability benefits received by plaintiff. *Page 12 
5. IT IS ORDERED that the issue of plaintiff's disability after February 19, 2009 is RESERVED. Either party may file a Form 33 request for hearing on this issue.
6. Plaintiff's request for attorney fees under N.C. Gen. Stat. § 97-88 is DENIED.
7. Defendants shall pay the costs, including an expert witness fee of $600.00 to Dr. Vanden Bosch.
This the ___ day of February 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ LAURA K. MAVRETIC COMMISSIONER *Page 1